**James V. EARL, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 19316.**

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 21, 1965.

Decided April 19, 1966.

Petition for Rehearing En Banc Denied Aug. 16, 1966.

532

Mr. James E. Hogan, Washington, D. C. (appointed by this court) for appellant.

Mr. Thomas Lumbard, Asst. U. S. Atty., with whom Messrs. John C. Conliff, Jr., U. S. Atty., at the time the brief was filed, and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee.

Before WILBUR K. MILLER, Senior Circuit Judge, and DANAHER and BURGER, Circuit Judges.

BURGER, Circuit Judge:

Appellant challenges his conviction on two counts of narcotics violations arising out of one transaction. A jury found him guilty of violating 26 U.S.C. §§ 4704 (a) and 4705(a) (1964) but not guilty on a third count alleging a violation of 21 U.S.C. § 174 (1964). He was given concurrent sentences of five years on the § 4705(a) count and one to five years on the § 4704(a) count.

The record reveals that an undercover policeman testified that he had purchased heroin from one Frank Scott on August 25, 1964, and that in consummating the purchase Scott told him to pay the ten dollars for the heroin to Appellant—then

identified only as "Sonny"—who was standing beside Scott at the time. The officer did so. In executing a "John Doe" warrant less than a month later, the officer arrested Appellant as the "Sonny" who had participated in the August 25 sale. At trial Appellant contended that this identification of him as "Sonny" was a mistake. He introduced testimony of relatives and friends that he had never been known by the nickname "Sonny", and testimony tending to prove that on August 25, 1964, he was wearing a cast on his arm which would have been obvious to the officer but which the officer did not observe. The verdict indicates the jury did not accept these defense claims.

The defense also called Frank Scott to the stand but Scott, on the advice of a Legal Aid Agency Attorney who came in at the request of the Trial Judge, asserted his Constitutional right not to give evidence which might incriminate him. Although certain pending charges against Scott had previously been dismissed on the Government's motion, as part of an arrangement in which he had pled guilty to another transaction, the District Court upheld Scott's refusal to answer as protected by the Fifth Amendment. The defense then made a proffer that Scott, if granted immunity from all future prosecution and thus protected from self-incrimination, would have testified that he had never known Appellant, that Appellant was not with him on the date of the alleged narcotics sale, and that Scott did know a person named "Sonny Ross," who frequented the area of the sale, dealt in narcotics, and resembled Appellant in stature and facial appearance.

Appellant argued on appeal that Scott should have been granted immunity and required to testify. His first argument relies on District of Columbia Code Title 23, Section 110, which provides:

When two or more persons are jointly indicted the court may, before a defendant has gone into his defense, direct any such defendant to be dis-

charged, that he may be a witness for the United States. An accused party may also, when there is not sufficient evidence to put him upon his defense, be discharged by the court, or, if not discharged by the court, shall be entitled to the immediate verdict of the jury for the purpose of giving evidence for the other parties accused with him; and such order of discharge in either case, equally with the verdict of acquittal, shall be a bar to another prosecution for the same offense.

Appellant says that the order dismissing the indictments against Scott should be taken as the "order of discharge" de-scribed in Section 23–110 and therefore the trial judge erred in ruling that Scott lacked immunity and could invoke the Fifth Amendment. This argument runs counter to the language of the statute in two places. First, the charges against Scott were not dismissed "for the purpose of [allowing him to give] * * * evidence for the other parties accused with him"; rather they were dismissed upon his entering a plea of guilty to another narcotics count. Second, Appellant has made no showing that Scott could have been discharged under this section; a prerequisite to such discharge is a lack of "sufficient evidence to put him upon his defense." To treat the dismissal of a count as carrying immunity under this statute would convert dismissals "without prejudice" to dismissals with prejudice in every case where the accused, as to whom the charges are dismissed, is under a joint indictment with another, for the statute provides that "the order of discharge" shall bar reprosecution; it does not restrict immunity to those cases where an accused actually does testify after being discharged. Finally, even if the statute applies to all persons jointly indicted, whether tried jointly or separately, and even if the trial judge at *Appellant's trial* could legally have initiated and carried out a grant of immunity to Scott under this statute after the charges against him had been dismissed (which questions we need not resolve), neither Appellant nor Scott was entitled

to such discharge in the absence of a showing that the Government lacked "sufficient evidence to put [Scott] * * upon his defense."

■ Appellant's second contention begins by calling to our attention a statute, 18 U.S.C. § 1406 (1964), which provides:

> Whenever in the judgment of a United States attorney the testimony of any witness * * * in any case or proceeding before any grand jury or court of the United States involving any violation of—[certain statutes, including those under which Appellant was indicted] * * * is necessary to the public interest, he, upon the approval of the Attorney General, shall make application to the court that the witness shall be instructed to testify * * * and upon order of the court such witness shall not be excused from testifying · * * * on the ground that the testimony or evidence required of him may tend to incriminate him or subject him to a penalty or forfeiture. * * *

The section concludes by providing that witnesses compelled to testify under this section, after having claimed the privilege against self-incrimination, shall be granted immunity from prosecution and penalty or forfeiture for or on account of any event or thing they testify about, and that their testimony shall not thereafter be used as evidence against them in any criminal proceeding. Appellant points out that the Government could have used this section to compel Scott to testify. (Obviously the Government would be unlikely to call a witness unless his testimony was thought to be in support of the Government's case.) He alleges that the Government here had made an agreement in the usual form of "plea bargaining" with Scott pursuant to which some charges against him were dismissed. In these circumstances, where the Government could grant a witness immunity and force him to testify against the defendant, and where the Government has accepted a guilty plea to less than all counts and dismissal of others and his testimony is pertinent,

Appellant claims that the refusal of the United States Attorney and the Court to grant the witness immunity and force him to testify denied Appellant a fair trial, in violation of the Due Process Clause of the Fifth Amendment.

Appellant also points to the first sentence of D.C.Code § 23–110, *supra,* which authorizes a judge to "discharge" and thus grant immunity to, a co-indictee, whether or not the Government has enough evidence against him to convict, in order that he may testify for the United States. Since that statute authorizes the trial judge to grant immunity to Scott if he were wanted as a witness for the Government, it is unfair, Appellant argues, that the Government should not be compelled to grant Scott immunity in order to testify for Appellant.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. State of Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). No such suppression is involved here, however. Here the prosecution has not affirmatively withheld a witness or concealed evidence; it transported the witness from a Federal Prison and produced him in court. At that point the witness declined, on Fifth Amendment grounds, to testify. What Appellant asks this Court to do is command the Executive Branch of government to exercise the statutory power of the Executive to grant immunity in order to secure relevant testimony. This power is not inherent in the Executive and surely is not inherent in the judiciary. In the context of criminal justice it is one of the high-

est forms of discretion conferred by Congress on the Executive, *i. e.,* a decision to give formal and binding absolution in a judicial proceeding to insure that an individual's testimony will be compelled without subjecting him to criminal prosecution for what he may say. The effect of the immunity grant avoids any incrimination. The Government does not suggest that Congress could not provide for a procedure giving a defendant a comparable right to compel testimony, but only that Congress has not done so. Whatever the merits of the arguments in favor of such a procedure, it is obvious that it would require safeguards to preclude abuses; the complexity and difficulty of evaluating the impact of that course suggest at once the inadequacy of the facilities available to the judiciary to make the assessment. We conclude that the judicial creation of a procedure comparable to that enacted by Congress for the benefit of the Government is beyond our power.[1]

We are reinforced in this conclusion by the Supreme Court's recent emphasis on the reflection in the privilege against self-incrimination of "the Constitution's concern for the essential values represented by 'our respect for the inviolability of the human personality and of the right of each individual "to a private enclave where he may lead a private life." ' " Tehan v. United States ex rel. Shott, 382 U.S. 406, 416, 86 S.Ct. 459, 465, 15 L.Ed. 2d 453 (1966). (Footnote omitted.) See also In re Bart, 113 U.S.App.D.C. 54, 57–58, 304 F.2d 631, 634–635 (1962). To the extent that this value is reflected in the privilege, it is impaired by requiring confession to a crime even where there will be no criminal liability therefor. Moreover, it may well be argued that a

---

1. We might have quite different, and more difficult, problems had the Government in this case secured testimony from one eyewitness by granting him immunity while declining to seek an immunity grant for Scott to free him from possible incrimination to testify for Earl. That situation would vividly dramatize an argument on behalf of Earl that the statute *as applied* denied him due process. Argu-

ments could be advanced that in the particular case the Government could not use the immunity statute for its advantage unless Congress made the same mechanism available to the accused. Here we are asked in effect to rewrite a statute so as to make available to the accused a procedure which Congress granted only to the Government.

grant of immunity from prosecution does not free the witness from all disadvantages. Testimony under an immunity grant which revealed criminal conduct might well prejudice Scott's efforts to gain release on parole, for a Parole Board is not limited to convictions but to conduct generally. See generally Hyser v. Reed, 115 U.S.App.D.C. 254, 263–264, 318 F.2d 225, 234–235, cert. denied *sub noms.* Thompson v. United States Board of Parole, Jamison v. Chappell, 375 U.S. 957, 84 S.Ct. 446, 11 L.Ed.2d 315 (1963).

In this context we are unable to consider judicial power as broad enough to accomplish this end assuming *arguendo* it is a desirable end. Appellant's contentions must be addressed to Congress.

Affirmed.