### UNITED STATES of America

#### v.

### Guido ROCCO, John Martin Neiman, Anthony R. La Duca, Herman Levine, Anthony R. La Duca, Appellant.

#### No. 78–1356.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Sept. 5, 1978.

Decided Nov. 14, 1978.

---

Robert J. Del Tufo, U. S. Atty., Newark, N. J., for appellee; Samuel A. Alito, Jr., Asst. U. S. Atty., Newark, N. J., on the brief.

Steven H. Gifis, Princeton, N. J., for appellant; Eric B. Ryan, on the brief.

Before SEITZ, Chief Judge, and ADAMS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

Anthony La Duca appeals from a denial by the district court of his motion for a new trial, which had been predicated upon newly discovered evidence. La Duca had premised his motion on an affidavit by one John Neiman stating that he was now prepared to testify to La Duca's innocence. Neiman was the other principal participant in the activities for which La Duca had been convicted. The trial judge denied the motion, reasoning that inasmuch as La Duca had not sought to compel Neiman's testimony at the trial by requesting that the government confer use immunity upon Neiman, he had not exercised the diligence in procuring the newly discovered evidence that is required to prevail on such motion. Although we affirm the order denying the motion for a new trial on the strength of all the facts in the record, we wish to make clear that we do not affirm the proposition advanced by the trial judge since it is contrary to the settled rule of this Court as well as that of other circuits.

La Duca, Neiman, and two other men were indicted in 1975 for conspiring to embezzle money from a union pension fund, for embezzling $100,000 from that fund, and for related offenses. Neiman pleaded guilty to the conspiracy count on November 24, 1975, and La Duca stood trial by himself on the single charge of embezzlement. La Duca was convicted based on a jury verdict entered on January 23, 1976. On March 1, 1976, Neiman was sentenced to three years imprisonment and the remaining counts against him were dismissed. La Duca was sentenced on March 24, 1976, to a three year prison term.[1]

For purposes of this appeal it is necessary to review those aspects of La Duca's trial that relate to Neiman's availability as a witness. Neiman appeared at the trial with his attorney on January 21, 1976, after efforts to locate him were made by both the government and the defense. Neiman's attorney informed the judge that his client would not testify on behalf of either side, and that if called to the stand, Neiman would invoke his privilege against self-incrimination. Counsel also stated that he had apprised both sides of this position when they sought Neiman's testimony. The judge asked Neiman if he would invoke the privilege against self-incrimination if he were called, and Neiman answered in the affirmative. Defense counsel moved to have Neiman invoke the privilege in the presence of the jury, but the judge denied the motion on the ground that invocation of the privilege is a matter of no legal significance.[2]

Neiman was excused and left the courtroom. Then, defense counsel pointed out that although several counts were still open against Neiman, in view of the fact that Neiman had already pleaded guilty to one count as part of a plea bargain to dismiss

---

1. This Court affirmed the conviction, *United States v. La Duca*, 546 F.2d 417 (3d Cir. 1976), and the Supreme Court denied certiorari, 430 U.S. 965, 97 S.Ct. 1644, 52 L.Ed.2d 356 (1977).

La Duca's sentence was subsequently reduced to eighteen months.

2. Appellee's Supplemental Appendix at 35b–41b.

146

the remaining counts, he might not be able to invoke the fifth amendment. The judge reprimanded defense counsel for not raising the point before Neiman was dismissed, but agreed to examine Neiman if he were brought back. However, Neiman could not be found. Defense counsel, after consulting with La Duca on whether he should press the issue, conceded that perhaps Neiman could still invoke the fifth amendment privilege, and let the matter rest.[3]

In October, 1977, La Duca moved for a new trial, pursuant to Federal Rule of Criminal Procedure 33, based on newly discovered evidence. His motion was accompanied by an affidavit in which Neiman declared that he was now willing to give testimony that would exculpate La Duca, and explained that he had not appeared at trial on La Duca's behalf because at that time he was still in jeopardy on the open counts of the pending indictment and feared that if he testified a more severe sentence would be imposed on him in retaliation for his testifying.

■ To prevail on a motion for a new trial on the ground of newly discovered evidence, a defendant bears the heavy burden of establishing five requirements:

(a) the evidence must be in fact, newly discovered, i. e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.[4]

The district court based its denial of the motion for a new trial upon La Duca's failure to meet the second requirement, stating that La Duca had not been diligent in attempting to obtain the evidence prior to the conclusion of his trial since La Duca had not requested that the government confer use immunity upon Neiman.

The trial judge conceded that as the law now stands, "absent special circumstances, the Sixth Amendment imposes no affirmative obligation on the government to confer immunity on a witness in order to make that witness's testimony available to a defendant."[5] Still, the judge asserted, "For me, however, . . . a Sixth Amendment breach would occur."[6] The lower court further posited that even if no sixth amendment obligation existed and even if the court is powerless to compel the government to immunize a defense witness, due process considerations of fairness "mandate that the government request use immunity for a defendant's witness or be barred from prosecuting the defendant."[7] Having laid this groundwork, the district court concluded that since La Duca had not requested the government to immunize Neiman, he had failed to exercise due diligence and consequently was not entitled to a new trial.

We cannot subscribe to the district court's analysis, which rests on two propositions. First, it is maintained that the sixth amendment or the due process clause mandates that the government make use immunity available to a defendant. Second, as a corollary of the foregoing, it is contended that defense counsel does not exercise due diligence in obtaining evidence if he fails to request immunization of a witness who would otherwise invoke the fifth amendment privilege.

■ The first proposition, though suggested by a number of commentators[8] as a

3. *Id.* at 43b–51b.

4. *United States v. Iannelli,* 528 F.2d 1290, 1292 (3d Cir. 1976), *quoting United States v. Howell,* 240 F.2d 149, 159 (3d Cir. 1956).

5. *United States v. La Duca,* 447 F.Supp. 779 (D.N.J.1978).

6. *Id.*

7. *Id.* at 13.

8. Westen, *The Compulsory Process Clause,* 73 Mich.L.Rev. 71, 166–70 (1974); Comment, *Right of the Criminal Defendant to the Compelled Testimony of Witnesses,* 67 Colum.L. Rev. 953, 956 n.19 (1967); Comment, *A Re-Examination of Defense Witness Immunity: A New Use of Kastigar,* 10 Harv.J.Legis, 74, 79 (1972); Note, *The Sixth Amendment Right to*

practical solution to the recurring problem of obtaining the allegedly exculpatory testimony of defense witnesses who refuse to incriminate themselves,[9] has been rejected to date by this as well as other courts of appeals. Rather, it has been uniformly accepted that the grant or denial of immunity is within the sole discretion of the executive branch of government, and that neither the courts nor defense counsel may force the prosecutor to compel the testimony of a defense witness.[10] As we recently confirmed in *United States v. Niederberger*, 580 F.2d 63 (3d Cir. 1978):

> The rule in this Circuit is clear; a trial court has no authority to provide use immunity for a defense witness. *United States v. Morrison*, 535 F.2d 223, 228–29 (3d Cir. 1976) *cert. denied*, (197-); *United States v. Berrigan*, 482 F.2d 171, 190 (3d Cir. 1973). Similarly, except in an extraordinary circumstance . . . , a trial court cannot compel the Government to offer

Thus, neither La Duca nor the government has advanced on appeal the theory propounded by the district court. In view of this fact and in view of the fact that even were this Court now to adopt the first proposition of the district court we would be precluded from affirming the district court's rationale for the reasons set forth in our discussion of that court's second proposition, it is inappropriate at this juncture to reconsider the settled rule as enunciated in our earlier opinions.

---

*Have Use Immunity Granted to Defense Witnesses*, 91 Harv.L.Rev. 1266 (1978).

**9.** It is contended with a degree of ingenuity that in the aftermath of 18 U.S.C. § 6002 and *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), a practical approach exists for resolving the competing values of the fifth amendment privilege of a witness against self-incrimination and the sixth amendment right of a defendant to have compulsory process for obtaining witnesses in his favor. Traditionally, it has been held that a defendant's right must yield to the witness' privilege, and that the defendant may be tried without the benefit of the exculpatory testimony. *E. g., Holloway v. Wolff*, 351 F.Supp. 1033, 1037–38 (D.Neb.1972), *rev'd on other grounds*, 482 F.2d 110 (8th Cir. 1973). Although theoretically the witness could be stripped of his privilege by granting him immunity from prosecution, prior to 1970 such an approach would have severely hampered the efforts of law enforcement authorities, who were at that time required to provide full transactional immunity to prospective witnesses to remove their constitutional privilege. However, in 1970 Congress enacted 18 U.S.C. § 6002, which confers only use immunity upon witnesses who are compelled to testify, and this statute was upheld against constitutional attack in *Kastigar*. Since under use immunity the government may still prosecute a witness on the basis of evidence gathered from sources independent of the witness' testimony, it is argued that the government's interest in withholding immunity is now insufficient to outweigh the defendant's sixth amendment interest in producing exculpatory testimony, and that consequently the government must immunize defense witnesses. *See* Westen, *supra* note 8, at 166–70.

The government maintains that notwithstanding the availability of use immunity, a requirement that it be compelled to immunize defense witnesses would jeopardize its investigations and prosecutions, United States Attorneys Manual § 1-11.230 (1977), and urges here that the district court's order denying La Duca's motion for a new trial be affirmed on other grounds.

**10.** *E. g., United States v. Housand*, 550 F.2d 818, 824 (2d Cir.), *cert. denied*, 431 U.S. 970, 97 S.Ct. 2931, 53 L.Ed.2d 1066 (1977); *United States v. Alessio*, 528 F.2d 1079 (9th Cir. 1976); *United States v. Allstate Mortgage Corp.*, 507 F.2d 492 (7th Cir. 1974), *cert. denied*, 421 U.S. 999, 95 S.Ct. 2396, 44 L.Ed.2d 666 (1975); *United States v. Berrigan*, 482 F.2d 171 (3d Cir. 1973); *Earl v. United States*, 124 U.S.App.D.C. 77, 361 F.2d 531 (1966), *cert. denied*, 388 U.S. 921, 87 S.Ct. 2121, 18 L.Ed.2d 1370 (1967) (suggesting, however, at 361 F.2d at 534 n.1 that there may be a due process violation if the prosecution immunizes its own witnesses while refusing to immunize defense witnesses). For a lone voice in opposition, see *United States v. Gaither*, 176 U.S.App.D.C. 274, 539 F.2d 753 (1976) (statement of Bazelon, C. J., as to why he voted to deny rehearing *en banc*), *cert. denied*, 429 U.S. 961, 97 S.Ct. 388, 50 L.Ed.2d 329 (1976); *United States v. Leonard*, 161 U.S.App.D.C. 36, 494 F.2d 955, 985 n.79 (1974) (Bazelon, C. J., concurring and dissenting).

In *United States v. Morrison*, 535 F.2d 223, 229 (3d Cir. 1976), this Court commented that [t]here are circumstances under which it appears due process may demand that the Government request use immunity for a defendant's witness . . . . Such a circumstance was created in this case when prosecutorial misconduct caused the defendant's principal witness to withhold out of fear of self-incrimination testimony which would otherwise allegedly have been available to the defendant.

The absence of any suggestion of prosecutorial misconduct in the present case makes *Morrison* inapplicable.

such immunity to a prospective witness. *Morrison, supra,* 535 F.2d at 229.

█ Since the first proposition contradicts the accepted rule of law in this Court, its corollary, the second proposition, must fail. A defendant cannot be faulted for not exercising due diligence to request use immunity if settled case law does not indicate that he could successfully make such a request.

█ Although we are constrained to disagree with the district court's rationale, we nevertheless affirm the denial of the motion for a new trial because the record provides alternative grounds for refusing to grant the motion.[11] The defense exhibited a lack of due diligence in failing to bring to the judge's attention until after Neiman had departed from the courtroom that the privilege against self-incrimination might no longer be available to Neiman. Whether or not Neiman in fact was still privileged at the time in question is now irrelevant. Since the issue was not clearcut at that time [12] and since the defense did not pursue its resolution as part of a sustained effort to compel Neiman's testimony, the defense never discharged its responsibility to act diligently in procuring the evidence on which it now seeks to base its motion for a new trial.

We also note that La Duca has not satisfied the weighty burden of convincing the district court that the newly discovered evidence "would probably produce an acquittal." [13] Neiman's lengthy criminal record, which includes crimes of fraud, would have made him easily impeachable. Particularly reminiscent of the situation in this case, is Neiman's posture in *United States v. Crisona,* 271 F.Supp. 150 (S.D.N.Y.1967), *aff'd* 416 F.2d 107 (2d Cir. 1968). There, a co-defendant sought a severance on the ground that Neiman's testimony would exculpate him.[14] Severance was denied and, despite the co-defendant's forecast, Neiman subsequently testified as a government witness.[15] The defense has made no effort to dispel the inevitable inference from Neiman's past that Neiman's testimony would be unlikely to result in an acquittal.

We have reviewed La Duca's other contentions and find them to be without merit. Accordingly, the order of the district court will be affirmed.

---

11. *See, e. g., PAAC v. Rizzo,* 502 F.2d 306, 308 n.1 (3d Cir. 1974), *cert. denied,* 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804 (1975) ("It is proper for an appellate court to affirm a *correct* decision of a lower court even when that decision is based on an inappropriate ground.") (emphasis in original).

12. On the one hand, it might have been concluded that since Neiman was entitled to "specific performance" of his plea bargain agreement, under which the remaining counts were to be dismissed, *Santobello v. New York,* 404 U.S. 257, 263, 92 S.Ct. 495, 30 L.Ed.2d 427 (1972), those remaining counts could not have furnished a basis for Neiman's claim of privilege. On the other hand, this Court has been most reluctant to hold that a witness may no longer invoke the privilege against self-incrimination when any possibility of injury from his own testimony still exists. *See United States v. Yurasovich,* 580 F.2d 1212 (3d Cir. 1978) which was decided after the completion of La Duca's trial.

13. *See* text accompanying note 4 *supra.*

14. 271 F.Supp. at 153.

15. 416 F.2d at 109.
   The trial court in this case expressed similar concern whether a new trial could be predicated upon Neiman's promised testimony:
   Any rule of law which would result automatically in a new trial upon the submission of an affidavit like the one in this case would place tremendous and dangerous power in the hands of a pleading co-defendant. It would enable him to give to a co-defendant who chooses to go to trial the gift of a second chance if the first jury should convict, and this where there is substantial doubt as to whether the witness's testimony was even desired at the time of the original trial and thus substantial doubt as to whether that now-proffered exculpatory testimony is worthy of belief.
   *United States v. La Duca,* 447 F.Supp. 779 (1978).