**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Donald Phillip LENZ,**
**Defendant-Appellant.**

**No. 79–5076.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 10, 1979.

Decided March 10, 1980.

Rehearing and Rehearing En Banc
Denied April 29, 1980.

Thomas E. Jackson, Kenneth R. Sasse, Stephen Gleit, Federal Defender Office, Detroit, Mich., for defendant-appellant.

James K. Robinson, U. S. Atty., Thomas W. Cranmer, Maura Corrigan, Detroit, Mich., for plaintiff-appellee.

Before WEICK and LIVELY, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

HARRY PHILLIPS, Senior Circuit Judge.

Donald Phillip Lenz appeals from his jury conviction for armed bank robbery in violation of 18 U.S.C. § 2113. The Government granted immunity to Lenz's alleged accomplices in return for their testimony against Lenz. However, the United States Attorney refused to seek use immunity for a defense witness. Lenz says the Government's actions denied him compulsory process and a fair trial. We disagree and affirm his conviction.

I

Appellant Lenz was prosecuted for taking part in robberies of the Monroe County [Michigan] Bank on January 24, 1977 and August 9, 1977. Willie Sherrod, who admitted participating in both robberies, and Charles Foust, who took part in the August robbery only, testified that Lenz drove the getaway cars used in the robberies. Both Sherrod and Foust testified pursuant to plea bargain agreements which guaranteed they would not be prosecuted for the Monroe County Bank robberies if they entered pleas of guilty to unrelated charges and testified against Lenz.

Lenz argued that he had not participated in either robbery and that Sherrod and Foust only sought to implicate him in order to secure more favorable treatment at the hands of the Government. In support of his innocence, Lenz called Robert Mooneyham, who Sherrod and Foust testified planned both robberies and participated in the first. Mooneyham, however, had not been charged in connection with either robbery, and he asserted his self-incrimination privilege not to testify. Lenz asked the United States Attorney to request use immunity for Mooneyham pursuant to 18 U.S.C. § 6003,[1] but the request was refused.

1.  18 U.S.C. § 6003 provides:
    § 6003. Court and grand jury proceedings
    (a) In the case of any individual who has been or may be called to testify or provide other information at any proceeding before or ancillary to a court of the United States or a grand jury of the United States, the United States district court for the judicial district in which the proceeding is or may be held shall issue, in accordance with subsection (b) of this section, upon the request of the United States attorney for such district, an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in section 6002 of this part [18 USCS § 6002].

Ultimately, the jury convicted Lenz of the August 9 robbery, but acquitted him of the January 24 robbery. District Judge Patricia A. Boyle sentenced Lenz to a term of five years' imprisonment.

## II

Lenz argues, first, that the decision of the Government not to seek use immunity kept Mooneyham from testifying in Lenz's behalf, thereby infringing Lenz's compulsory-process right to present a defense. He says the Government's traditional reasons for refusing to grant immunity—that doing so would empower a suspect to give his confederates an "immunity bath" and would interfere with the executive's decision whom to prosecute—apply to transactional immunity, not use immunity. Given the Supreme Court's acceptance of use immunity in *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), Lenz contends that the Government now has no legitimate interest in refusing to grant immunity to defense witnesses. Consequently, Lenz concludes, the defendant's compulsory-process right demands that the Government immunize defense witnesses. *See generally* Westen, *The Compulsory Process Clause*, 73 Mich.L.Rev. 71, 149–59, 166–70 (1974).

■ The short answer to this contention is that defendants have no compulsory-process right to have their witnesses immunized. The cases decided under the compulsory process clause of the sixth amendment hold only that the Government may not act to prevent an otherwise willing witness from testifying for the defendant. *See Webb v. Texas*, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972); *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); *United States v. Morrison*, 535 F.2d 223 (3d

Cir. 1976). So far as we are aware, no court has held that compulsory process requires the Government to exercise its statutory use-immunity power affirmatively for a defendant's benefit.

■ Furthermore, a holding that defendants have a compulsory-process right to have their witnesses granted use immunity would require courts either to immunize those witnesses themselves or to order the Government to do so. However, courts have no inherent power to grant immunity. *See Ellis v. United States*, 135 U.S.App.D.C. 35, 40–41, 416 F.2d 791, 796–97 (D.C.Cir. 1969); *Earl v. United States*, 124 U.S.App. D.C. 77, 80, 361 F.2d 531, 534 (D.C.Cir.1966), *cert. denied*, 388 U.S. 921, 87 S.Ct. 2121, 18 L.Ed.2d 1370 (1967). Nor has the Constitution been construed to authorize courts to compel testimony despite the witness' claim of self-incrimination privilege. *See Ellis v. United States, supra*, 135 U.S.App.D.C. at 41, 416 F.2d at 796. *Compare Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) (immunizing defendants who must testify in suppression hearings in order to establish standing to assert fourth amendment violations); and *Murphy v. Waterfront Commission*, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964) (prohibiting the Government from using testimony compelled in violation of the witness' self-incrimination privilege). Rather, use immunity is a statutory creation. 18 U.S.C. § 6003 commits the decision to grant or deny immunity to the sole discretion of the executive branch of the Government, and the courts have no power to compel the United States Attorney to immunize defense witnesses. *See United States v. Herman*, 589 F.2d 1191, 1200 (3d Cir. 1978), *cert. denied*, 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979); *United States v. Rocco*, 587 F.2d 144, 147 & n.10 (3d Cir. 1978), *cert.*

(b) A United States attorney may, with the approval of the Attorney General, the Deputy Attorney General, or any designated Assistant Attorney General, request an order under subsection (a) of this section when in his judgment—
(1) the testimony or other information from such individual may be necessary to the public interest; and

(2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination.
(Added Oct. 15, 1970, P.L. 91–452, Title II, § 201(a), 84 Stat. 927.)

*denied sub nom. La Duca v. United States,* 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979), and cases cited therein.

While use immunity for defense witnesses may well be desirable, *see, e. g.,* Westen, *The Compulsory Process Clause, supra,* 73 Mich.L.Rev. at 166–70, its proponents must address their arguments to Congress, not the courts. We find no authority for it in the compulsory process clause of the sixth amendment.

Since the defendant's compulsory-process right is not at stake, we need not balance it against the Government's justifications for withholding immunity.

■ Lenz's second argument is that, by "purchasing" the incriminating testimony of Sherrod and Foust while refusing to clear the way for Mooneyham to present exculpatory testimony, the Government engaged in a sort of gamesmanship that violated Lenz's due process right to a fair trial. In support of this contention, he cites *United States v. Morrison, supra,* 535 F.2d 223 (3d Cir. 1976).

*Morrison* is not in point. In that case, a defendant charged with conspiracy to distribute hashish planned to have his girl friend testify that she, not the defendant, had been involved in the conspiracy. The girl friend originally had been charged with conspiracy, but the charges were dropped when it was discovered she had been under eighteen at the time of the crime. She apparently was under the misimpression that she no longer could be prosecuted, even as a juvenile, and that her testimony therefore could not hurt her. The Assistant United States Attorney, however, subpoenaed the woman, had her brought to his office, and made clear to her that her testimony might subject her to prosecution. The Third Circuit found this was an affirmative interference with the defendant's right to present a defense, a violation of his compulsory-process rights under *Webb v. Texas, supra.* The court reversed the conviction and stated that the only way the Government could cure the violation was to immunize the witness; if it chose not to do so, the defendant could not be retried. Thus, *Morrison* involved a denial of compulsory process, not a violation of the due process clause except as it applies compulsory process to the states. Since there has been no interference with Lenz's compulsory process rights, *Morrison* has no application in the present case.

However, several courts have indicated that, under appropriate circumstances, they might find that a prosecutor's immunity decisions violated due process. The first hint of such a theory seems to have been a footnote in the opinion by then Circuit Judge Burger in *Earl v. United States, supra,* which stated that it might be a denial of due process for the Government to immunize its own witnesses but not the defendant's. 124 U.S.App.D.C. at 80 n.1, 361 F.2d at 534 n.1. The Second Circuit has cited the *Earl* footnote twice, but found it unnecessary to decide the due process question. *See United States v. Lang,* 589 F.2d 92 (2d Cir. 1978); *United States v. Wright,* 588 F.2d 31 (2d Cir. 1978), *cert. denied,* 440 U.S. 917, 99 S.Ct. 1236, 59 L.Ed.2d 467 (1979). The Ninth Circuit in *United States v. Alessio,* 528 F.2d 1079, 1082 (9th Cir.), *cert. denied,* 426 U.S. 948, 96 S.Ct. 3167, 49 L.Ed.2d 1184 (1976), suggested the *Earl* footnote merely restates the well-settled proposition that the Government may not exercise its discretion in a manner which denies the defendant a fair trial. The Third Circuit, in *United States v. Herman, supra,* 589 F.2d at 1204, took the more restrictive position that there is no due process violation unless the Government made its immunity decisions with the deliberate intention of distorting the judicial fact-finding process.

We have found only one reported case holding that the Government's immunity decisions denied due process. In *United States v. De Palma,* 476 F.Supp. 775, 781 (S.D.N.Y.1979),[2] the Government granted transactional immunity to its own witnesses but refused to grant even use immunity to the defendant's. The *De Palma* court or-

---

**2.** Now on appeal to the Second Circuit.

dered a retrial from which the Government's immunized-witness testimony would be excluded unless the Government also granted the defendant's witness immunity.

We find it unnecessary to decide whether, under other circumstances, the Government's refusal to immunize defense witnesses might deny the defendant his due process right to a fair trial. The due process argument of Lenz depends on two assumptions which we find unsupported by the record: that, had he been granted immunity, Mooneyham would have testified; and that, had he testified, Mooneyham would have told the jury Lenz did not participate in either robbery. In fact, the record shows Mooneyham was subpoenaed, brought from the Atlanta penitentiary where he was incarcerated on an unrelated charge, and put on the witness stand. There, he refused to testify on the ground that doing so would put his life in jeopardy. This being the case, it appears Mooneyham would not have testified about the robberies even under a grant of immunity. Furthermore, it is not even clear that Mooneyham's testimony would have benefitted Lenz. Lenz's attorney stated only that Mooneyham's expected testimony would be "very significant" and that, but for the self-incrimination problem, Mooneyham would have been a defense witness. At no time did counsel describe the substance of Mooneyham's expected testimony nor even intimate that he knew what it would be. Even if the due process rule Lenz proposes were accepted, this record would not establish a violation.

We have also considered Lenz's other assignments of error and find them so unmeritorious as not to warrant discussion. Accordingly, the judgment of the district court is affirmed.