**UNITED STATES of America, Plaintiff,**

v.

**Harry Hamilton McMICHAEL, Defendant.**

**Crim. A. No. 80–CR–97.**

United States District Court, D. Colorado.

May 21, 1980.

Joseph F. Dolan, U. S. Atty., Linda A. Surbaugh, Asst. U. S. Atty., Denver, Colo., for plaintiff.

E. Michael Canges, Denver, Colo., for defendant.

**MEMORANDUM OPINION**

WINNER, Chief Judge.

Defendant has filed a motion asking that I immunize a witness the defendant wants to call. This is but one of the earlier of what I suspect will be a spate of motions filed as a result of the widespread publicity given to the February 5, 1980, decision of the United States Court of Appeals for the Third Circuit in *Government of the Virgin Islands v. Smith, et al.*, 615 F.2d 964, a case I shall discuss presently. Because of the holding in that case which I think is the first of its kind, and because I am informed that it has resulted in countless similar motions being filed throughout the United States, I think it appropriate that I reduce to writing my thinking on the matter, coupled with an expression of hope that if certiorari is not sought and granted in the Third Circuit Case, by my denial of the motion the Tenth Circuit may be given an opportunity to advise all trial judges as to the applicable law in this circuit.

Defendant's motion in this case says that Pamela Lynn Nelson, a defendant in a companion case, could testify to defendant's "lack of knowledge" of the offense with which he is charged and on which he will stand trial one week after the motion was filed. I have advised counsel orally that the

motion is denied and that this opinion will follow. Defense counsel says in the motion:

"Upon information and belief, garnered as a result of extensive investigation by the undersigned counsel, conversations with Ms. Nelson, a thorough review of discovery materials submitted by the government, as well as conversations with counsel for Ms. Nelson, Pamela Lynn Nelson is a critical and essential witness for the defendant, and in fact, is the only witness who can corroborate the defendant's innocence in this within action."

These averments give one cause for pause. If Ms. Nelson has talked to counsel for defendant McMichael, although he may have conflict of interest problems, there is no privilege, and any admission made by Ms. Nelson would not be hearsay. Mr. Canges could withdraw and testify to them. If Ms. Nelson's counsel has talked to McMichael's counsel, the question of waiver of privilege is fuzzy at best, and admissions by her lawyer may not be hearsay. Perhaps her lawyer could be called for inquiry as to what he told Mr. Canges. If the discovery materials disclose the lack of knowledge, Ms. Nelson's testimony isn't essential. What I am suggesting is that counsel for defendant McMichael may be dancing on the head of a pin in making the statements I have quoted above. But, I don't rest this opinion on that uncertainty even though it may in and of itself constitute a failure on the part of defendant to carry the burden imposed on a defendant by *Government of the Virgin Islands* as a condition to granting what that court calls "judicial immunity."

*Government of the Virgin Islands v. Smith* was decided on the basis of quite unusual facts, and I think that it is a perfect example of a case in which hard facts make what I think is bad law. The case involved an alleged assault in which $25 was stolen. Enersto Sanchez had made a statement to the police inculpating himself and identifying by nickname three other persons. The listed nicknames fit one defendant but two other defendants had never used any of the names used. When called at the trial, Sanchez claimed his privilege against self-incrimination and refused to testify. The defendants asked that immunity be granted, and, because Sanchez was a juvenile, exclusive jurisdiction over him vested in the Attorney General of the Virgin Islands *who agreed to grant immunity*, but, just as a matter of courtesy, he conditioned this on approval by the United States Attorney. For some inexplicable reason, the United States Attorney, who had no prosecutorial jurisdiction anyway, refused to approve the grant of immunity by the Attorney General of the Virgin Islands who had exclusive jurisdiction. On this strange record, the defendants were convicted and each was sentenced to six and one-half years for the $25 robbery.

■ *Government of the Virgin Islands v. Smith* is a two-pronged opinion, and I fully agree with its first prong but, with due deference to the Third Circuit, I disagree with the second part and elect not to follow it unless and until I am directed to do so by the Tenth Circuit or until the United States Supreme Court voices approval of the case or its reasoning.

Following an earlier opinion in *United States v. Herman* (1978) 3 Cir. 589 F.2d 1191, cert. den. 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386, *Government of the Virgin Islands* first holds:

". . . *Herman* recognized that under certain circumstances due process may require that the government afford use immunity for a defense witness. This recognition followed from this court's decision in *United States v. Morrison*, 535 F.2d 223 (3rd Cir. 1976) which held that where prosecutorial misconduct occurred (in that case intimidation of a defense witness) the government could be directed to either obtain use immunity, so that the witness could testify, or suffer a judgment of acquittal. *Morrison*, however, did not specify the burden which defendant was required to meet in order to obtain such extraordinary relief. The dimensions of the defendant's burden were not established until *Herman* when this court stated:

" 'We think that the evidentiary showing required to justify reversal on that ground must be a substantial one. The defendant must be prepared to show that the government's decisions were made with the deliberate intention of distorting the judicial fact finding process. . .

"[*Herman*] conditioned this remedy on a showing by the defendant that the government's decision not to provide immunity was a decision made 'with the deliberate intention of distorting the judicial fact finding process.' Absent this type of prosecutorial misconduct, a defendant is foreclosed from insisting that statutory immunity be granted his witness."

With these thoughts of the Third Circuit I wholeheartedly agree, because this procedure gives the government a right of appeal from a dismissal order after the prosecution has made its executive decision and before there is much chance of double jeopardy. This is the procedure I have followed in a not too dissimilar situation. *United States v. Orman*, (1976) D.C.Colo., 417 F.Supp. 1126. Here, on the record, defendant concedes that he cannot meet the burden imposed on him under this approach of *Government of the Virgin Islands*, and defendant admits that the claim for immunization rests entirely on the "judicial immunity" theory of the case.

Since this is a matter of first impression with me, although I am told that the request has been or will be made to other judges of this court, at the outset I asked defendant's lawyer for an offer of proof, and he said that if called, and if immunized, Ms. Nelson would testify that defendant didn't know what was in a box shipped to her from Ecuador. I have made brief comment on the possibility that this offer of proof presents possible problems for counsel, but I set the motion for an evidentiary hearing. Ms. Nelson appeared with her lawyer, and she reluctantly testified to her name, but that ended her testimony, and I was assured that it mattered not what she was asked, because if the question even remotely involved the facts of the case with which she stands charged, she would refuse to testify. To me this isn't all that different from the typical case where there are co-defendants, neither of whom can call the other, but it is urged that *Government of the Virgin Islands* makes for a whole new ball game with its "judicial immunity" approach. Therefore, I think it essential to talk about the second prong of that case.

The case was sent back to the Virgin Islands trial court for a hearing to determine whether:

".   .   . the actions of the United States Attorney, as they bear upon Sanchez' refusal to testify and the immunity proffered by the Attorney General, were taken with the deliberate intention of distorting the factfinding process, [and, if they were, to] enter a judgment of acquittal as to defendants, Glen, Rieara and Georges, *unless the government consents to grant statutory use immunity to Sanchez.*"

This result bothers me not, because it requires a decision by the executive branch of the government, acting under the supervisory powers of the judiciary to insure due process, and it does not result in a takeover by the judiciary of something I think is for the executive branch to decide, based upon all of the information known to the prosecutor. If the same choice were reserved to the executive branch under prong two of *Government of the Virgin Islands*, I suspect that the number of motions which will be filed would be greatly reduced, because, just as here, in most instances there would be an admission of lack of the required evil intent on the part of the prosecution. But, the Third Circuit didn't stop at this point when it got to the so-called "judicial immunity." Quoting from its earlier decision in *Herman*, the Court said that something which was recognized as a "possibility" in *Herman* was an *actuality* in *Virgin Islands* :

"*Herman* also suggested the availability of still another form of immunity, which stems from a court's inherent power:

" 'But while we think that the court has no power to order a remedial grant of statutory immunity to a defense witness absent a showing of unconstitutional abuse, a case might be made that *the court has an inherent authority to effectuate the defendant's compulsory right by conferring a judicially fashioned immunity upon a witness whose testimony is essential to an effective defense.*' [emphasis in original.]'"

How this new found "judicial immunity" comes into being is explained by the court:

"First the need for 'judicial' immunity is triggered, not by prosecutorial misconduct or intentional distortion of the trial process, but by the fact that the defendant is prevented from presenting exculpatory evidence which is crucial to his case. Second, the immunity granted is a *court decreed immunity; it is not achieved by any order directed to the executive, requiring the executive to provide statutory immunity.*"

The Court reasoned to its conclusion that there is power to grant "judicial immunity" from cases it concedes are not directly in point. It used as springboards its own earlier decision in *Herman,* and *Chambers v. Mississippi* (1973), 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed. 297; *Gideon v. Wainright* (1963) 371 U.S. 335; *Roviaro v. United States* (1957) 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639; *Brady v. Maryland* (1963) 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215; *Williams v. Florida* (1970) 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446; *Simmons v. United States* (1968) 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247; *In re Grand Jury Investigation* (1978) 3 Cir., 587 F.2d 589, and *United States v. Inmon,* 3 Cir., 568 F.2d 326. I confess that having read for the first time some of the cases cited and having reread the others, I do not come up with the belief that a court can grant "judicial immunity" and I think all a trial judge can do is to say to the prosecution that unless the executive grants the statutory immunity, the case will be dismissed. I know that *Government of*

*the Virgin Islands* recognizes that it takes an exceptional case to grant judicial immunity:

". . . the power to grant judicial immunity only applies to a witness whose testimony is exculpatory and essential to the defense and when there are no strong countervailing government interests."

And, as I have said, I don't think that required showing has been made here because all defense counsel has proffered is a claim that Ms. Nelson will testify to what defendant knew, and I have not infrequently ruled that a witness can't testify to the fact of another person's state of mind, barring a possible exception where the witness is a psychiatrist. More importantly, though, I don't think that a trial judge is possessed of this power and I seriously doubt that the grant would be effective in another court system. [At least, if I were a lawyer, I would tell my client not to rely on such a grant of "judicial immunity" as being effective in all courts unless and until the United States Supreme Court says this is the law.] *Government of the Virgin Islands* discusses *Kastigar v. United States* (1972) 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212, and the Third Circuit argues:

"In many instances, use immunity, which was all that was sought here and is all that is constitutionally required, *Kastigar v. United States,* 406 U.S. 441, [92 S.Ct. 1653, 32 L.Ed.2d 212] is virtually costless to the government. For example, the government may have already assembled all the evidence necessary to prosecute the witness independent of the witnesses' testimony. Or the government may be able to 'sterilize' the testimony of the immunized witness and so isolate it from any future testimony of the witness that it would not trench upon any of the witness' constitutional rights if he were subsequently to be prosecuted."

I grant all of this, but the government might not be able to do any of the enumerated things, and I think that *Government of the Virgin Islands* does not adequately take

into account everything held in *Kastigar.* It must be remembered that *Kastigar* challenged the *statutory* grant of use immunity. Justice Powell reviewed the history of immunity *statutes* enacted by Parliament, the Congress and all state legislatures. In upholding the constitutionality of our present federal use immunity *statutes* [18 U.S.C. §§ 6002–6003] the court emphasized that "The power of *government* to compel persons to testify in court or before grand juries and other governmental agencies is firmly established in Anglo-American jurisprudence." I find no suggestion in the opinion of any power to grant immunity by independent action of a court. I do find a quotation from Justice White's opinion in *Murphy v. Waterfront Commission* (1964) 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678, where it is said:

"Among the necessary and most important of the *powers of the states* as well as the Federal Government to assure the effective functioning of government in an ordered society is the broad power to compel residents to testify in court or before grand juries or agencies. See, *Blair v. United States,* 250 U.S. 273 [39 S.Ct. 468, 63 L.Ed. 979]. Such testimony constitutes one of the *Government's* primary sources of information.

I find this language no suggestion that immunity is to be granted by a court and I read the case to say that the legislative and executive branches of the government decide on extending an immunity grant with what amounts to only ministerial approval of the paperwork by the courts. This is precisely what many cases hold. See, *In re Perlin* (1978) 7 Cir., 589 F.2d 260; *U. S. v. Hollinger,* (1977) 7 Cir., 553 F.2d 535; *U. S. v. Leyva* (1975) 5 Cir., 513 F.2d 774; *In re Lochiatto* (1974) 1 Cir., 497 F.2d 803; *In re Kilgo* (1973) 4 Cir., 484 F.2d 1215. To me, these cases are inconsistent with reasoning that the grant of immunity is a judicial function encompassing judicial discretion, because if judicial discretion is involved, there would be no need for the observations

that the grant of immunity by a judge is "largely ministerial." An examination of the cases shows that the comment has been made time and time again. Additionally, mention must be made of a decision by *another panel of the Third Circuit in United States v. Niederberger* (1978) 580 F.2d 63:

"*The rule in this Circuit is clear; a trial court has no authority to provide use immunity for a defense witness. United States v. Morrison,* 535 F.2d 223 (3rd Cir. 1976); *United States v. Berrigan,* 482 F.2d 171 (3rd Cir. 1973). Similarly, except in an extraordinary circumstance which was not present below, a trial court cannot compel the government to offer such immunity to a prospective witness."

■ As the Seventh Circuit said when reviewing a Tax Court decision [*Ryan v. Commissioner of Internal Revenue* (1977) 568 F.2d 531, 540], ". . . the immunity statute delegates the authority to obtain an immunity grant solely to the executive branch of the government," and, although I concede that the language refers to the "immunity statute" I think that the principle is applicable to the power to grant immunity as distinguished from the power to order dismissal unless *statutory immunity* is granted. In *United States v. Graham* (1977) 8 Cir., 548 F.2d 1302, 1314, Chief Judge Gibson said, "The power to apply for immunity pursuant to 18 U.S.C. §§ 6002–03 is the sole prerogative of the Government being confined to the United States Attorney and his superior officers." Defendant there was making an equal protection argument, and if there be such a thing as "judicial immunity" I am confident that the Eighth Circuit would have discovered it.

An earlier plea to the Seventh Circuit that a defendant has a constitutional right to obtain a grant of use immunity fell on deaf ears in *United States v. Allstate Mortgage Corporation* (1974) 507 F.2d 492, 495:

"Under neither statute [the earlier federal immunity statute passed on in *Earl v. United States,* 361 F.2d 531 and the present statute] is anyone other than the

United States Attorney, with the approval of superior officials, *authorized to request an order granting immunity to a witness.* While the Congress may have the power to grant appellants a right comparable to the right granted to the government, the judicial creation of such right is beyond the power of the courts. *Earl,* supra.

"The rule in *Earl* has been uniformly followed subsequent to the enactment of §§ 6002 and 6003. (citations omitted.) As recently as August 6, 1974, this circuit in *United States v. Ramsey,* 503 F.2d 524, in speaking of the subject said: *'There is not merit to the argumentation that a defendant has a constitutional right to have immunity conferred upon a defense witness who exercises his privilege against self-incrimination.' "*

As I read the cases, the great weight of authority holds that there is no such thing as the grant of "judicial immunity," with the exception of an enunciation of a judicial power to order that statutory immunity be granted with dismissal to follow if the grant does not issue. I go along with what I think was the unvarying rule before the decision in *Government of the Virgin Islands.* I do this because I think that is what the law is, and I do it because I suggest that the Third Circuit's opinion doesn't face up to the mischief which can result from an exercise of this heretofore unknown power of a judge. I should emphasize that much of what remains to be said is not likely to happen with present counsel, but the rule of law must be one which will take care of potentials available to lawyers possessed of ethical standards less strict than those followed by counsel in this case.

Quoting from *Counselman v. Hitchcock* (1892) 142 U.S. 547, 585, 12 S.Ct. 195, 35 L.Ed. 1110, *Kastigar* reiterates:

" '. . . In view of the constitutional provision [the 5th Amendment] a statutory enactment, to be valid, must afford absolute immunity against future prose-

cution for the offense to which the question relates.' "

And, quoting from *Murphy v. Waterfront Commission* (1964) 378 U.S. 52, 79, 84 S.Ct. 1594, 1609, Justice Powell emphasized:

" 'A state witness may not be compelled to give testimony which may be incriminating under federal law unless the compelled testimony and its fruits cannot be used in any manner by federal officials in connection with a criminal prosecution against him. We conclude, moreover, that in order to implement this constitutional rule and accommodate the interests of the State and Federal Governments in investigating and prosecuting crime, the Federal Government must be prohibited from making any such use of compelled testimony and its fruits.' "

Footnote 47 in *Kastigar* leaves no room for doubt as to the extent of protection afforded by a statutory grant of use immunity:

"In *Malloy v. Hogan,* 378 U.S. [1489] at 10–11 [84 S.Ct. 1489, at 1494–1495, 12 L.Ed. 653] the Court held that the same standards would determine the extent or scope of the privilege in state and in federal proceedings, because the same substantive guarantee of the Bill of Rights is involved. The Murphy Court emphasized that the scope of the privilege is the same in state and in federal proceedings."

Thus, as I read the Supreme Court's opinions, once statutory immunity is granted by a state or a federal court, use of the compelled testimony or its fruits is prohibited in any court, and, as is said in *Murphy* and is repeated in *Kastigar* :

" 'Once a defendant demonstrates that he has testified, under a state grant of immunity, to matters related to the federal prosecution, the federal authorities have the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence.' "

With this statement in mind, let us assume a routine drug case in which it is said that one defendant would exculpate another defendant by providing an alibi. Let us further assume that "judicial immunity" is granted, and the witness then blurts a confession that he or she assassinated Judge Wood. This volunteered statement would saddle the prosecution with proving in a later murder trial that its evidence was "not tainted by establishing that they had an independent, legitimate source for the disputed evidence," and I see no reason to chance imposition of such a burden on the Government. If given an original choice, the prosecution might well elect to accept a dismissal of the drug charge rather than to jeopardize the murder case. No trial judge could know of the potential hazards of granting "judicial immunity," and that is another reason I don't think the power exists.

The prosecution knows and it should know much more about the hazards of granting immunity than does any trial judge. It is easy to say that the granting of use immunity is "virtually costless to the government," but I do not think that a trial judge lacking knowledge of the total case should be the one to make the decision as to the asking price for the immunity grant. Conferring use immunity may seem to carry little cost with it, but facts which the prosecution does not want to disclose and which it should not be required to disclose may inflate the cost to monumental proportions if all facts were disclosed. Trial judges cannot maintain impartiality if they make the inquiry which should be made to decide whether immunity should be granted, and if a United States District Judge

can grant immunity, so can a Bankruptcy Judge or an Administrative Law Judge or a Colorado non-lawyer county or municipal judge or an Indian Tribal Judge. The power to immunize potential criminal defendants is a power which should not be attempted by all of the judges of the United States unless and until Congress delegates that jurisdiction to the judiciary, and Congress has not seen fit to do so, nor do I think it likely that Congress has any such legislation in mind.

For that reason, unless and until the Tenth Circuit or the United States Supreme Court tells me I have the right to grant effective "judicial immunity" I shall continue with my belief that I have no such power and I shall grant no immunity except as Congress has said it can be granted under 18 U.S.C. §§ 6002–6003. I do not decide and I hope I am not confronted with need to decide what should be done if some other judge accepts *Government of the Virgin Islands* as gospel and announces a grant of "judicial immunity." However, I am aware that a judicial act in excess of jurisdiction may be a nullity and I think that any grant of "judicial immunity" is in excess of jurisdiction.