UNITED STATES of America

v.

Robert MAKER.

Crim. A. No. 85–150.

United States District Court,
W.D. Pennsylvania.

Nov. 21, 1988.

J. Alan Johnson, U.S. Atty., Bruce Teitelbaum, Asst. U.S. Atty., Pittsburgh, Pa., for plaintiff.

Robert Maker, Milan, Mich., for defendant.

## OPINION

GERALD J. WEBER, District Judge.

On January 29, 1986, Robert Maker was sentenced on the verdict of a jury for participation in a conspiracy to possess cocaine with intention to distribute. On February 24, 1987, the Court of Appeals affirmed judgment in a detailed 16 page Memorandum Opinion (No. 86–3126, 2–24–87, unpublished). 813 F.2d 398. On September 27, 1988, Maker filed in this court a Motion for New Trial and/or Evidentiary Hearing Based on Newly Discovered Evidence. The Motion is 22 typewritten pages long, most of it presenting legal citations that have little relevance to the facts here.

To attempt to be brief defendant now argues that a government witness presented perjurious testimony and that the government was aware at the time that the testimony was perjurious, that the government withheld exculpatory material, and that the prosecuting attorney physically assaulted defendant's counsel to the extent that he was no longer effective in representing defendant at trial.

The difficulty is that despite his 21 page motion there is no evidence to support any of his claims. There is nothing "newly discovered" in defendant's motion, and the record belies most of his contentions.

█ The main contention centers around the testimony of Richard Black. Black testified at length about his drug dealings with Maker. These events occurred after the last date charged in the conspiracy count. The court admitted this testimony over objection under Fed.R.Evid. 404. The Court of Appeals affirmed the decision in admitting the evidence in an extensive discussion (see typescript Memorandum Opinion pp. 2–5).

Defendant now claims that Black perjured himself on direct examination by stating that he did not enter into a plea agreement before he testified, whereas he and his brother had signed a guilty plea and a statement of rights on the day before he testified. This was allegedly done in Black's attorney's office in Huntingdon, Pennsylvania, with the state prosecutor

who was bringing the state charges under which the Blacks were arrested.

Defendant further alleges that the guilty plea and statement of rights "contained *promises, concessions, immunity, monetary compensation that he was paid for his testimony* and *leniency* for their cooperation."

The trouble with this allegation is there is no evidentiary support for the existence of such a document. The United States Attorney denies knowledge of the existence of such a document and the District Attorney for Huntingdon County denies its existence and presents copies of the docket sheets for the state cases showing that no such agreement had been filed.

The trial court and the jury were fully aware of the circumstances under which Black testified. The first four pages of the witness Richard Black's testimony (see Transcript pp. 172–176) deal with the fact that he had entered a plea to the state charges, that he had agreed to cooperate with the authorities, that he had agreed to testify at the instant federal trial and that nothing that he said to law enforcement authorities or in testifying at trial would be used against him in a federal prosecution for marijuana, and that the extent of his cooperation would be brought to the attention of the court in Huntingdon County in which he had been charged. Richard Black was further subjected to cross-examination on his understanding of the plea agreement (Testimony pp. 192–194) and the court itself questioned the witness as to his understanding of the immunity granted.

It is clear that the court, the jury, and defense counsel were fully advised of the circumstances under which Black testified. The government fully disclosed all the details of the witness's plea agreements with both state and federal authorities. We are sure that any additional evidence thereon would be merely cumulative, and would not change the result in view of the overwhelming nature of the evidence against Maker.

(A) Maker makes separate allegations of misconduct by the prosecutor. The first relates to the non-production of the alleged "plea agreement and statement of rights" with which we have dealt above. No such document has been produced and nothing allegedly contained therein differs from the description of his plea agreement by the witness on the stand.

■ (B) Maker complains that he was not provided with Brady material consisting of 12 items of evidence relating specifically to the marijuana charges against the Blacks in Huntingdon County. The government replies that it was not in possession of any of this material at the time of Maker's trial in this court except for Maker's Exhibit 1, the photographs of the Moon Bar Ranch and the marijuana seized therefrom. It is difficult to see how any of this information could be considered *Brady* material. It is noted that each of these items was produced to the defense at Maker's separate trial for the marijuana offense in the Middle District of Pennsylvania, where he was convicted. Defendant was thus long aware of their existence before the present motion.

■ (C) Defendant argues that the witness Ingold had provided the government with exculpatory statements to the effect that Maker was not involved with any narcotic transactions between the co-conspirators Ingold and Gesuale. Again Ingold admitted at the trial that he had falsely testified before the Grand Jury that Maker was not involved which testimony he recanted at the trial. Again, this matter was subjected to extensive examination and cross-examination at trial. Defendant raises the fact that the rap-sheet on the witness Ingold was incomplete in that it omitted two arrests not resulting in conviction. However, Ingold was subjected to extensive examination on his prior record, and even if such omission were admissible, they would only be cumulative, and could not possibly have resulted in a favorable verdict for defendant.

■ (D) The only other allegation worthy of comment here is that an Assistant

278

United States Attorney physically assaulted Stephen Sokol, Maker's defense attorney, in the courtroom to the extent that Sokol was intimidated and failed to provide effective assistance through the rest of the trial. This event was supposed to have taken place in the courtroom in the presence of numerous witnesses, including other defendants, defense counsel and court personnel. The trial judge did not see any such assault, and if he was not present in the courtroom he was in the adjoining judicial chamber. Nothing of the sort was commented upon by court attendants, clerks, marshals or any other party. The defendant has failed to supply any supporting evidence of any nature concerning such an incident. The court observes that defense attorney Sokol continued to provide a vigorous defense for Maker through all stages of the trial.

We find all of defendant's allegations to be meritless and without foundation. The alleged evidence is not newly discovered, it was covered at trial. To raise these issues three years after trial does not support the requirement that defendant act with due diligence. The evidence is, if believed, merely cumulative and impeaching, and not material to the issues involved, and finally, the evidence is not of such a nature that on a new trial the alleged newly discovered evidence would probably produce an acquittal in view of the extensive evidence of guilt of the defendant. *See United States v. Iannelli,* 528 F.2d 1290 (3d Cir.1976); *United States v. Rocco,* 587 F.2d 144 (3d Cir.1978).

We do not find the testimony by Richard Black to be false. He was on the stand and gave his understanding of the plea agreement into which he had entered with the Huntingdon authorities. It covers all the aspects of the alleged document to which defendant refers. He was subjected to extensive direct and cross-examination on this. Defendant cannot say he was taken by surprise by the testimony. The testimony would be merely cumulative and impeaching.

One final element must be considered. On the presentation of defendant's motion on September 27, 1988, we ordered the United States to respond by October 7, 1988. On October 31, 1988, defendant filed a Motion for Default Judgment for the failure of the United States to respond by October 7, 1988. We know of no authority for a party to enter a default against the government in a criminal case because of failure to timely respond to a motion. Rule 55 is a Federal Rule of Civil Procedure and applies to a failure to plead. A court may apply sanctions for a failure to follow its orders, upon motion by the moving party or on its own motion, and thus may in severe cases result in a dismissal of an action, but such circumstances are not apparent here. Fed.R.Civ.P. 55(e) provides that no judgment by default shall be entered against the United States unless the claimant establishes his claim or right to relief by evidence satisfactory to the court. There is no such evidence here.

In response to this Motion let it be noted that the Assistant United States Attorney called the court before the October 7, 1988 date and informed the court that he would require additional time to respond. The court orally told counsel that it had no objection, and it does not consider the delay significant, or in any way prejudicial to the movant. Unfortunately, the United States Attorney did not memorialize this extension of time by a document for the record, for which it is hereby reprimanded. The default is ordered stricken and the motion for default judgment is denied.