UNITED STATES, Appellee,

v.

Jerry L. VILLINES, Private First Class,
U. S. Marine Corps, Appellant.

NCM 78 1687.

No. 39,504.

U.S. Court of Military Appeals.

April 19, 1982.

For Appellant: *Lieutenant Georgia L. Winstead,* JAGC, USNR (argued); *Lieutenant Kerry T. Davidson,* JAGC, USN (on brief).

For Appellee: *Lieutenant Commander William A. Dorsey,* JAGC, USNR (argued); *Commander T. C. Watson, Jr.,* JAGC, USN, *Lieutenant J. G. Van Winkle,* JAGC, USNR (on brief); *Lieutenant Colonel J. DeWayne Littlejohn,* USMC.

Opinion

FLETCHER, Judge:

Contrary to his pleas, appellant,[1] Private Villines, was convicted of conspiring with Private Holodinski and Private Crone to steal the motorcycle of Corporal Hunnel, in violation of Article 81, Uniform Code of Military Justice, 10 U.S.C. § 881. He was also found guilty, contrary to his pleas, of stealing this same motorcycle, in violation of Article 121, UCMJ, 10 U.S.C. § 921. For these offenses *inter alia,*[2] he was sentenced by members at his special court-martial to a bad-conduct discharge, confinement at hard labor for 3 months, and reduction to the grade E–1. This court-martial took place from April 17 to 27, 1978. The convening authority approved this sentence on September 7, 1978, and the supervisory authority did, likewise on October 6, 1978; the Court of Military Review affirmed on June 30, 1980. 9 M.J. 807.

Appellant was earlier tried by special court-martial in March and April 1978, for these same offenses but a mistrial was declared on April 5, 1978. Between these two courts-martial of Private Villines, his trial defense counsel on April 6, 1978, requested that the Commanding General, 2nd Marine Aircraft Wing, Marine Air Corps Station,

---

1. This case is before us at the request of the Acting Judge Advocate General of the Navy. *See* Article 67(b)(2), Uniform Code of Military Justice, 10 U.S.C. § 867(b)(2). Appellate defense counsel and government counsel both refer to Private Villines as appellant on the certified question apparently because his conviction was affirmed by the Court of Military Review. *Cf.* Rule 7, Court of Military Appeals, Rules of Practice and Procedure, 4 M.J. XCVIII.

In view of Rule 31, *id.* at CXVII, we also shall refer to Private Villines as appellant.

2. Appellant was also found guilty of two specifications of unauthorized absence, in violation of Article 86, UCMJ, 10 U.S.C. § 886, which are unrelated to the certified question.

Cherry Point, North Carolina, grant testimonial immunity[3] to Private Holodinski if the Government decided to court-martial appellant again.[4] In this written request counsel stated:

2. Prior to the trial of Private First Class Villines the defense interviewed Private First Class Holodinski and he made statements exculpatory of Private First Class Villines and indicated that he would testify in the same manner at trial. However, at trial Private First Class Holodinski, upon the advice of his counsel, refused to answer any questions and invoked his right against self-incrimination. Private First Class Holodinski had previously been convicted by a General Court-Martial of charges including the larceny of the Hunnell [sic] motorcycle.

3. Clearly Holodinski is a material witness in this case. The proposed grant of immunity will not preclude the government's future proceedings against Holodinski, if any, since there is manifestly independent sources for evidence against him in light of his prior conviction and the full investigation of this incident to date. The interests of justice demand that all available evidence be presented to the finders of fact. The testimony of Holodinski can be made available to the court-martial without the government suffering any legitimate adverse consequences. Therefore the defense requests that the immunity sought in paragraph 1 above be granted.

Trial counsel on April 10, 1978, forwarded this request to the general court-martial convening authority recommending disapproval. He stated:

2. The Trial Counsel agrees that in the interests of justice, all available evidence be presented to the finders of fact. However, in this case Private First Class HOLODINSKI's testimony is not available to the defense because he has invoked his right against self-incrimination. The interests of justice do not dictate that Private First Class HOLODINSKI be giv-

en testimonial immunity in order to make him available. Placing Private First Class HOLODINSKI on the witness stand under a grant of testimonial immunity would be like placing a stick of dynamite under the interests of justice. Due to his prior convictions on offenses by two of the government witnesses at his own trial who will be testifying at the trial of Private First Class Jerry L. VILLINES, Private First Class HOLODINSKI's obvious interest in fabricating the truth for either the Government or the Defense underlies one of the many policy reasons that Major TROMPETER's request should not be granted.

The convening authority denied defense counsel's request on April 18, 1978, without stating any reasons.

On April 20, 1978, defense counsel requested appropriate relief from the military judge at Private Villines' second court-martial because his requests for immunity for Private Holodinski and Lance Corporal Paul were denied. Corporal Paul was called as a witness at an Article 39(a)[5] session. He stated that he knew who stole the motorcycle of Hunnel and that appellant was not involved. He testified that he recently was convicted at a general court-martial for offenses not related to this motorcycle theft. Otherwise he refused to answer questions concerning this offense on the basis of his right against self-incrimination unless he was given immunity for his testimony. Private Holodinski also was called by the defense as a witness at an Article 39(a) session. He refused to answer any questions concerning the theft of Hunnel's motorcycle. He did state that he had recently been convicted at a general court-martial for the theft of Hunnel's motorcycle and this conviction was now on appeal.

Private Holodinski was excused by the military judge and at this point in the proceedings the following occurred:

DC: Your Honor, I would proffer that, if Private First Class HOLODINSKI were to testify pursuant to a grant of immunity or to testify otherwise in this

---

3. See 18 U.S.C. § 6002; see also Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

4. Defense counsel also requested that testimonial immunity be granted to Lance Corporal Paul.

5. UCMJ, 10 U.S.C. § 839(a).

case, that he would testify that: one, he knows the individuals who stole the motorcycle belonging to Lance Corporal HUNNEL on the evening of 15–16 September 1977; that Private First Class VILLINES, to his knowledge, was not among those individuals; that he had a conversation with Lance Corporal Roland PAUL shortly thereafter, shortly after the 16th of September 1977, at which time Lance Corporal PAUL made a statement to PFC HOLODINSKI regarding the use of the PAUL vehicle and the tools in the commission of the theft of the HUNNEL motorcycle and who the individuals were to whom those tools were given and that car was loaned.

MJ: Anything further?

DC: No, Your Honor.

MJ: Government counsel?

TC: Your Honor, one of the problems with this issue, the proffer of the defense counsel does not agree with the entire detail that the government counsel would proffer as to what PFC HOLODINSKI told the government counsel; substantially, it was the same; however, there were two differences. The government feels this is certainly subject to interpretation as to the different posture of the trial counsel and the defense counsel. Would Your Honor like for me to make the proffer of the two differences?

MJ: Yes, I would receive a more well-rounded idea of the various offers of this case.

TC: My proffer would be that, based on my conversation at the Correctional Facility with PFC Clinton HOLODINSKI, that PFC VILLINES is involved in the theft of the motorcycle, and it is open to a legal interpretation, the fact finders' interpretation, as to whether he is the principal to the larceny or merely an accessory after the fact. The other important detail that was different was when this conversation with Lance Corporal PAUL took place. PFC HOLODINSKI's conversation with the trial counsel was that in this conversation in which he learned what PAUL had to say on that night was over a month later. Now, the government would just underscore again that it is a proffer; one witness talking to two opposing counsel who have their own interests in this case. We feel again that this is one of the problems in an issue like this.

After both counsel argued their positions to the military judge, he ruled as follows:

Gentlemen, my decision in this case goes back to the Fifth and Sixth Amendments of the Constitution of the United States and my obligation to assure that the accused in this case receives a fair trial and a due process of law pursuant to the Fifth Amendment of the Constitution of the United States. It is my decision in this case that, of course, limited strictly to the facts of this case before me, that I will rule in limine; that, if at the appropriate time time [sic] in this trial the witness [sic], Lance Corporal PAUL, is called to testify and invokes his privilege as he has done in this court, I will abate the proceedings until he can be compelled to testify pursuant to a grant of use or testimonial immunity. I declined to so rule in the case of Private First Class HOLODINSKI who stands convicted of this or substantially an identical offense and is presently appealing that conviction.

Private Crone testified for the Government in this case under a grant of immunity. He stated that he and Private Holodinski had planned during the afternoon of September 15, 1977, to steal a motorcycle. Around 10:00 p.m. that night, they had located Hunnel's motorcycle and designated it the object of the theft. Later, around midnight, they were joined by appellant and developed a plan to cut the chain securing the motorcycle, transport it to Corporal Paul's room and disassemble it, and transport it off base in Corporal Paul's car. These plans were carried out by the three men between the hours of 1:00 a.m. and 3:00 a.m. on September 16, 1977. He finally

stated that Corporal Paul provided Holodinski with tools when the bike was brought to Paul's room.

Private Gary also testified for the Government in this case under a grant of immunity. He stated that he was the roommate of Corporal Paul and had slept in the room during the night of September 15, 1977. Although he personally observed nothing that evening, he further testified that appellant had joked with him the next day about sleeping through the dismantling of the dirt bike the night before.

Private Turk testified for the defense. He stated that he was the roommate of Corporal Paul and Private Gary and had slept in the room during the night of September 15, 1977. He also testified that he went to bed around 11:00 p.m. on September 15, 1977, and was awakened sometime during the night by Corporal Paul. He further added that at 6:00 a.m. September 16, 1977, he awoke and Corporal Gary was also then in the room. He testified that he observed nothing strange that night.

The general court-martial convening authority granted immunity to Corporal Paul who testified on appellant's behalf. He stated that on the night in question he loaned his tool box to Private Gary at about 11:30 p.m. He also stated that he loaned Private Gary his car between 1:00 a.m. and 3:00 a.m. the next day. He finally stated that he did not see Private Villines, Holodinski or Crone in his room that night or any motorcycle.

Private Holodinski was not granted immunity by the convening authority nor did he testify on the merits in appellant's case.

In its review of appellant's conviction, the Navy Court of Military Review said (9 M.J. at 810–11) the following about the military judge's ruling concerning the requested testimony of Private Holodinski:

> In his third assignment appellant contends that the judge erred when he refused to require a grant of immunity for a defense requested witness. In *United States v. Martin*, No. 78 1151, 9 M.J. 731 (NCMR 1979), *on reconsideration*, 9 M.J. 746 (NCMR 1980), this Court was confronted with a similar issue, whether the convening authority abused his discretion by refusing to grant testimonial immunity to a witness called by the defense. In that case, when the witness refused to answer certain questions, the judge directed the trial counsel to present the matter to the convening authority to ascertain if he would grant testimonial immunity. The convening authority declined to grant immunity, thus prompting the abuse of discretion assignment of error. This Court found no abuse of discretion on the basis that there had been no showing that the convening authority's action was "unreasonable, arbitrary, exceeded the bounds of reason or showed an unconscionable attitude."[2]

In the instant case, appellant requested that the convening authority grant testimonial immunity to two witnesses to enable their being called as material defense witnesses. Both of these prospective witnesses had been convicted by general courts-martial of charges arising from the same acts for which appellant was being tried. The convening authority denied the request for immunity and at trial the defense requested that the military judge order testimonial immunity for the two witnesses after an offer of proof as to their expected testimony was submitted. The judge treated the defense request as a motion for appropriate relief under military practice and procedure and ruled with respect to the first witness that if he was called and invoked his privilege against self-incrimination the judge would abate the proceedings until the witness could be compelled to testify pursuant to a grant of use or testimonial immunity. The judge declined to so rule with regard to the other witness who was appealing his conviction of a substantially identical offense. The effect of these rulings was that the first witness was thereafter granted immunity by the convening authority but the other was not. Appellant argues that the judge erred in not requiring a grant of immunity for the second witness.

No Court of Military Appeals opinions on this issue have been cited by counsel nor have any been found by this Court. There are opinions on this subject from various United States Circuit Courts of Appeal, however, with the majority holding that the Government is not required to grant immunity to a defense witness. *United States v. Lenz,* 616 F.2d 960 (6th Cir. 1980); *United States v. Herman,* 589 F.2d 1191 (3rd Cir. 1978); *United States v. Benveniste,* 564 F.2d 335 (9th Cir. 1977). *Cf. United States v. Beasley,* 550 F.2d 261 (5th Cir. 1977), *cert. denied,* 434 U.S. 938 [98 S.Ct. 427, 54 L.Ed.2d 297] (1977); *United States v. Smith,* 542 F.2d 711 (7th Cir. 1976); *United States v. Bautista,* 509 F.2d 675 (9th Cir. 1975), *cert. denied,* 421 U.S. 976 [95 S.Ct. 1976, 44 L.Ed.2d 467] (1975); *United States v. Jenkins,* 470 F.2d 1061 (8th Cir. 1972), *cert. denied* 411 U.S. 920 [93 S.Ct. 1544, 36 L.Ed.2d 313] (1973); *Earl v. United States,* 361 F.2d 531 (Ct.App.D.C.1966), *cert. denied,* 388 U.S. 921 [87 S.Ct. 2121, 18 L.Ed.2d 1370] (1967). In *United States v. Lenz, supra,* the Sixth Circuit Court of Appeals held that defendants have no compulsory process right to have their witnesses immunized and also that the compulsory process clause of the Sixth Amendment to the Constitution provides no basis for a court to grant immunity. A recent case from the Third Circuit, however has recognized at least two theories on which immunity granted by a court might be available to a defense witness. One of the theories is the same as argued in the instant case, that the witness's testimony is essential to an effective defense. The Court, however, set out narrow limits for its doctrine, requiring that, among other things, the testimony must be "clearly exculpatory" and "essential" and that there must be no "strong governmental interests" against immunity. *Virgin Islands v. Smith,* 615 F.2d 964 (3rd Cir. 1980). Here, it appears that there were strong governmental interests in not granting immunity while review of the witness's court-martial was pending. Accordingly, under any view,

whether it be that the judge had no authority in this area or that he did have authority but governmental interests weighed against the grant, or by applying the abuse of discretion standards of *United States v. Martin, supra,* there was no error committed by the judge in denying appellant's motion for relief.

---

[2] *United States v. Martin,* 9 M.J. 734 (1979).

On July 18, 1980, the Acting Judge Advocate General of the Navy certified (9 M.J. 210) the following question for review by this Court:

Was the United States Navy Court of Military Review correct, as a matter of law, when it held that, under any of three tests, the military judge correctly declined to either direct the testimonial immunization of PFC Holodinski, a prospective defense witness, or to abate the proceedings until a grant of testimonial immunity had been issued to PFC Holodinski; these three tests being:

a. The military judge had no authority in this area;

b. Assuming the military judge did have authority in this area, that authority permits him to take corrective action only when the convening authority is shown to have abused his discretion in declining to grant immunity to a prospective defense witness; and in this case the defense did not carry its burden of demonstrating that the convening authority's action was unreasonable, arbitrary, exceeded the bounds of reason, or showed an unconscionable attitude; or

c. Assuming the military judge did have authority in this area, even though the convening authority is not shown to have abused his discretion; that authority can be exercised only when the prospective witness's testimony is shown to be clearly exculpatory and essential to an effective defense, and there are no strong governmental interests against the grant of immunity; and in this case the fact that PFC

Holodinski's conviction by court-martial was not then final constituted a sufficient governmental interest to support the judge's denial of the requested grant of use *vis-a-vis* transactional immunity.

Appellate defense counsel for Private Villines filed a brief with this Court labeling her client as the appellant and urging us to set aside the findings of guilty and the sentence approved by the lower court. Appellate government counsel filed a brief in support of the decision of the lower court.

---

■ A preliminary question to be addressed in this case is whether the military judge erred by refusing to compel Private Holodinski to answer defense counsel's questions concerning the theft of Hunnel's motorcycle. *See* Articles 46 and 47, UCMJ, 10 U.S.C. §§ 846 and 847, respectively. The military judge's ruling was based upon Private Holodinski's assertion of his privilege against self-incrimination guaranteed by the fifth amendment. *See* Article 31, UCMJ, 10 U.S.C. § 831. The military judge was aware that in one of the charges against appellant, Private Holodinski was named as a co-conspirator in the theft of Hunnel's motorcycle. Moreover, during a hearing on this question, Private Holodinski informed the military judge that he had earlier been convicted at a general court-martial for offenses rising out of this incident and this conviction was presently on appeal.

■■ The privilege against self-incrimination may be invoked when a "witness has reasonable cause to apprehend danger" that he will implicate himself in a criminal offense by answering a question. *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). Here, the military judge was correct in finding that Private Holodinski as an alleged co-conspirator had reasonable cause to believe his answers to defense counsel's questions would implicate him in this offense. Of course, the privilege against self-incrimination may not be invoked when a witness has already been convicted of the offenses for which his testimony might provide a basis for criminal prosecution. *See Brown v. Walker*, 161 U.S. 591, 597, 16 S.Ct. 644, 647, 40 L.Ed. 819 (1896). Yet, in this case, Private Holodinski's conviction was not yet final (Article 76, UCMJ, 10 U.S.C. § 876) and was on appeal.[6] (Articles 66 and 67, UCMJ, 10 U.S.C. §§ 866 and 867, respectively). If his conviction was subsequently overturned and the Government again attempted to court-martial him for these offenses, his testimony at appellant's court-martial could be used against him. *See* para. 140a(6), Manual for Courts-Martial, United States, 1969 (Revised edition). *Cf. United States v. Milburn*, 8 M.J. 110 (C.M.A.1979). In such a situation, many state and federal courts hold that a witness has a valid fifth amendment claim. *See* 4 Orfield, *Criminal Procedure Under the Federal Rules*, § 26:617 (1967), and Annot., 9 A.L.R.3rd 990, 1001–03 (1966). I conclude that the military judge did not err in refusing to compel Private Holodinski to answer these questions. *Cf. United States v. Nix*, 11 U.S.C.M.A. 691, 29 C.M.R. 507 (1960).

---

A second preliminary question of importance in this case concerns the nature of a grant of immunity in the military justice system.

■ A starting point for addressing this question must be the decision of this Court in *United States v. Kirsch*, 15 U.S.C.M.A. 84, 35 C.M.R. 56 (1964). There a majority of the Court held that Congress had impliedly authorized, under various provisions in the Uniform Code of Military Justice, a court-martial convening authority to grant transactional immunity[7] to a witness at a

---

6. Government counsel avers that Private Holodinski was appealing his conviction on the ground that it was secured by the use of perjured testimony.

7. Transactional immunity may be defined as immunity which protects the witness from criminal prosecution for any act about which he may testify. *Counselman v. Hitchcock*, 142

court-martial. *Id.* at 90–92, 35 C.M.R. at 62–64. Moreover, the Court held that a witness granted such immunity could be constitutionally compelled to testify at a court-martial without infringing on his right against self-incrimination. *Cf.* Green, *Grants of Immunity and Military Law*, 53 Mil.L.Rev. 1, 25–27 (1971).

This Court also held that the President was authorized by Article 36, UCMJ, 10 U.S.C. § 836, to establish the appropriate means by which a convening authority might exercise this immunity power. *United States v. Kirsch, supra* at 92–95, 35 C.M.R. at 64–67. At that time, the Manual for Courts-Martial, United States, 1951, simply provided that only a general court-martial convening authority could grant immunity. *See* para. 148e, Manual, 1951, *supra.* At the time of appellant's court-martial, the Manual also provided that only a general court-martial convening authority could grant or promise immunity. *See* para. 68h, Manual, 1969, *supra.* As a matter of federal statutory law at the present time, a federal prosecutor when confronted with a witness who refuses to testify in court on the basis of his right against self-incrimination may, *after securing approval from the Attorney General or designated Assistant Attorney-General,* request an order from the court directing the witness to testify. *See* 18 U.S.C. § 6003. I also note that "no testimony or other information . . . derived from . . . [this compelled] testimony . . . [might] be used against the witness [as an accused] in any criminal case, "with certain limited exceptions. 18 U.S.C. § 6002. In light of these analogous federal civilian statutes and Article 36, the President was acting lawfully in specifically authorizing only a general court-martial convening authority to grant immunity to a witness at courts-martial. *See generally United States v. Hardin*, 7 M.J. 399 (C.M.A. 1979).

■ This preliminary inquiry is not finished. One next must consider the reasons for or conditions under which a general court-martial convening authority should exercise this power to grant immunity in order to compel a witness to testify at a court-martial. The decision in *United States v. Kirsch, supra,* provides some help. It acknowledged that the power of a general court-martial convening authority to grant immunity was based on the wide spectrum of powers provided him by Congress to establish a legal bar to prosecution of a person subject to the code and his command. *Id.* at 92, 35 C.M.R. at 64. These broad powers were conferred by Congress on a convening authority in recognition of the particular needs of the military which might dictate that a soldier be exonerated from punishment in order to assist in his command's mission. *See id.* at 93, 35 C.M.R. at 65. The Manual for Courts-Martial does not elaborate further on this broad discretion.

A similar congressional concern is reflected in 18 U.S.C. § 6003, which requires that a federal prosecutor and his superiors in the Department of Justice consider "the public interest" in initiating and approving immunity grants for recalcitrant witnesses. *See* Comments, *Defense Witness Immunity and the Right to a Fair Trial*, 129 U.Pa.L. Rev. 377, 391–400 (1980). The public interest spoken of in the context of an immunity statute is the effective enforcement of criminal laws. *See* Note, *The Due Process Right to The Immunization of Defense Witnesses*, 22 B.C.L.Rev. 299 n. 3 (1981). Accordingly, it is with this idea in mind, as well as the particular needs of his command, that a general court-martial convening authority should approach his decision to grant immunity to a witness at a court-martial. *See* Article 36(a).

■ The final aspect of this preliminary inquiry is whether a general court-martial convening authority may grant immunity to

U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892). *See* Green, *Grants of Immunity and Military Law*, 53 Mil.L.Rev. 1, 4 (1971). Paragraph 68h, Manual for Courts-Martial, United States, 1969

(Revised edition), does not specify the type of immunity, transactional or testimonial, which may be granted. *See* Article 36(a), UCMJ, 10 U.S.C. § 836(a).

a witness who will testify for the defense. It is, of course, highly unlikely that a trial counsel on his own initiative will request a convening authority to immunize a witness who would not support his case. *See Earl v. United States*, 361 F.2d 531, 533 (D.C.Cir. 1966), *cert. denied*, 388 U.S. 921, 87 S.Ct. 2121, 18 L.Ed.2d 1370 (1967). However, there is no prohibition in federal civilian or military law against a prosecutor taking such action or forwarding a defense request with his recommendation to the general court-martial authority. *See* Note, *supra* at 299 n. 6; Green, *supra* at 20–21. In either event, the request must be forwarded to the general court-martial convening authority. *See United States v. Kirsch, supra.* He must decide whether it is in the interests of effective law enforcement and his command to grant the immunity request.[8]

■■■ Turning to the case before us, I note at the outset that the general court-martial convening authority did not state his reason for denying immunity to Private Holodinski. Trial counsel's letter recommending denial of the request for immunity asserted that Private Holodinski had an obvious interest in fabricating the truth. It is a principle of federal law, however, that a grant of use immunity does not protect a witness against a subsequent prosecution for perjury. *See* 18 U.S.C. § 6002. Accordingly, this is not a valid reason for which this convening authority should deny this request. *Cf. United States v. Turkish*, 623 F.2d 769, 775 (2nd Cir. 1980).

Trial counsel also stated there were many unnamed policy reasons that militated against granting appellant's request. The military judge in addressing this question at trial stated more particularly that denial of the request was justified by the fact that Private Holodinski was convicted of a similar offense as that charged against appellant and he was presently appealing that conviction. In other words, the grant of immunity to Private Holodinski would in

the event of retrial somehow inhibit or foreclose his successful prosecution. Admittedly in the event of Private Holodinski's retrial, the Government would have a heavy burden to show that the evidence it utilized was not a result of his immunized testimony. *Kastigar v. United States*, 406 U.S. 441, 460–61, 92 S.Ct. 1653, 1664–65, 32 L.Ed.2d 212 (1972). I consider this some basis, albeit weak, on which a convening authority could decline to grant the witness immunity as requested by the defense. *See United States v. Turkish, supra* at 775. *Cf.* Comments, *supra* at 394–96. Its importance is heightened in the present case because if Private Holodinski's conviction is overturned on the ground of perjured testimony, new and untainted evidence would have to be developed to secure his conviction at a retrial.

---

I may now approach the particular questions of importance raised in this case. First, whether the military judge erred in refusing to order the convening authority to immunize Private Holodinski. *See Government of Virgin Islands v. Smith*, 615 F.2d 964, 968–69 (3rd Cir. 1980); *United States v. Herman*, 589 F.2d 1191, 1203–04 (3rd Cir. 1978), *cert. denied*, 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979); *United States v. Morrison*, 535 F.2d 223 (3rd Cir. 1976). Second, whether the military judge erred in allowing this trial to continue without providing in some manner for the presentation by the defense of the testimony of this witness. *See Government of Virgin Islands v. Smith, supra* at 969–74; *see also United States v. Redding*, 11 M.J. 100, 117 (C.M.A.1981) (Fletcher, J., dissenting).

■ Viewing the first question from the perspective of the Acting Judge Advocate General of the Navy and the Navy Court of Military Review, I first must decide whether the military judge has any authority to review decisions made by a convening authority concerning immunity. A grant of

---

8. We need not decide whether JAGMAN 0112 prohibits granting immunity to a witness who would testify in favor of the defense or whether such a service regulation so interpreted is lawful within the meaning of the Uniform Code of Military Justice and the Manual for Courts-Martial. *See* Article 46, UCMJ, 10 U.S.C. § 846.

immunity, as indicated earlier, is a power or tool provided by Congress to the prosecutor to assist him in his law-enforcement function. *See* Note, *supra* at 299. There are many well-established reasons in the federal system of criminal law administration for providing broad discretion to prosecutorial authorities to exercise this power in the public interest. *See United States v. Turkish, supra* at 779–80 (Lumbard, J., concurring in part, dissenting in part). Although this discretion is broad, it is still subject to constitutional and statutory limits. *United States v. Turkish, supra* at 769, 774. In a related matter, the Supreme Court recently stated its position on the exercise of prosecutorial discretion:

> There is no doubt that the breadth of discretion that our country's legal system rests in prosecuting attorneys carries with it the potential for both individual and institutional abuse. And broad though that discretion may be, there are undoubtedly constitutional limits upon its exercise . . .

*Bordenkircher v. Hayes,* 434 U.S. 357, 365, 98 S.Ct. 663, 669, 54 L.Ed.2d 604 (1978) (footnote omitted). I believe that the military judge was empowered by Congress to resolve similar questions in the military justice system. Article 39(a).

■ A secondary question raised in this context concerns the particular standard under which the military judge should review a decision of a convening authority denying immunity to a witness for the defense. I note that it is well established that prosecutorial authorities may not exercise their discretion "based upon an unjustifiable standard [or improper consideration] such as race, religion, or other arbitrary classification." *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446 (1962); *see Bordenkircher v. Hayes, supra* at 364; *see also United States v. Batchelder,* 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979). Moreover, prosecutorial authorities may not exercise their power or refuse to exercise it with the deliberate intention of distorting the judicial fact-finding process.

*United States v. Herman, supra* at 1204; *see also Government of Virgin Islands v. Smith, supra* at 968; *cf. United States v. Turkish, supra* at 774 n.3. If sufficient evidence of such prosecutorial misconduct is presented by the defense, the Government must come forward and justify the convening authority's action in terms of a legitimate command interest. *Id.*

■ There is no averment of such prosecutorial abuse in the case before us or any indication in the record that the convening authority acted in this manner. Moreover, as indicated earlier, I conclude that the possibility of Private Holodinski's retrial on the same offenses to which he would testify at appellant's trial was some reason for the convening authority to decline to exercise immunity in the command's interest. *See United States v. Turkish, supra* at 775. Accordingly, the military judge did not err as a matter of law in refusing to order the immunization of Private Holodinski nor need I now postulate as to the appropriate remedy for such misconduct in other cases.

■ The final question to be decided in this case is whether appellant was nevertheless denied a fair trial because the military judge allowed this court-martial to continue without the testimony of Private Holodinski. *See Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); *Government of Virgin Islands v. Smith, supra.* As a starting point, I note that simply because prosecutorial authorities are often given unique powers, not available to a criminal defendant, to protect the public interest through effective law enforcement, the latter is not constitutionally denied a fair trial. *Roviaro v. United States, supra* 353 U.S. at 59, 77 S.Ct. at 627; *United States v. Turkish, supra* at 774–75. Rather, in making such a claim, appellant has an affirmative and heavy burden to establish that the prosecutorial authorities in the exercise of these powers denied him clearly exculpatory evidence. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Government of Virgin Islands v. Smith, supra* at 970–73. He has not met that burden in the present case.

Private Holodinski's testimony was obviously relevant to the offenses charged against appellant. Moreover, it was potentially material in that, besides appellant, who did not testify, he was the only person who could directly challenge the testimony of the government witness Crone as to the existence of the conspiracy and the theft and disposal of Hunnel's motorcycle. Yet, unlike the witness Corporal Paul, he did not represent in court to the military judge that he knew who stole the motorcycle and that appellant was not involved. Moreover, his representations prior to trial on different occasions to defense counsel and trial counsel raised serious questions as to the exculpatory nature of the evidence he might offer on Private Villines' behalf. *See United ed States v. Lowell*, 649 F.2d 950, 965 (3rd Cir. 1981). Finally, no particulars as to the content of his expected exculpatory testimony were offered to the convening authority or the trial judge by either counsel. *See United States v. Herbst*, 641 F.2d 1161, 1168 (5th Cir. 1981). In such a situation, I conclude that it was within the trial judge's discretion to find the proffered testimony ambiguous and not clearly exculpatory. Under these circumstances, appellant was not denied a fair trial.[9] *See Government of Virgin Islands v. Smith, supra* at 972.

**9.** The Supreme Court has not specifically addressed the question whether a criminal defendant is constitutionally entitled to have material defense witnesses immunized, under what conditions they must be immunized or what remedy is available to him if immunity is not granted. The majority rule of the federal courts of appeals is that a criminal defendant has no such constitutional right. *See United States v. Turkish*, 623 F.2d 769, 775 (2nd Cir. 1980); *United States v. Lenz*, 616 F.2d 960 (6th Cir. 1980) *cert. denied*, 447 U.S. 929, 100 S.Ct. 3028, 65 L.Ed.2d 1124 (1980); *cf. Government of Virgin Islands v. Smith*, 615 F.2d 964 (3rd Cir. 1980). We need not prematurely decide these questions in the present case because even under the minority rule as stated in *Government of Virgin Islands v. Smith, supra,* the criminal defendant has the affirmative burden to establish his claim in the trial court before any balancing between the Government's and the criminal defendant's interests occurs. *Cf.* Comments, *Defense Witness Immunity and the Right to a Fair Trial*, 129 U.Pa. L.Rev. 377, 401-416 (1980).

**1.** *United States v. D'Apice*, 664 F.2d 75 (5th Cir. 1981); *United States v. Turkish*, 623 F.2d

To the extent indicated above, I answer the questions certified by the Acting Judge Advocate General.

The decision of the United States Navy Court of Military Review is affirmed.

COOK, Judge (concurring in the result):

Civilian judicial opinion holds unanimously that the federal civilian statutes on witness immunity vest authority to override a witness' valid assertion of the constitutional right to remain silent to avoid self-incrimination exclusively in the Executive Branch of Government.[1] Only "upon ... request of the United States attorney" may a judge "issue ... an order requiring ... [the witness] to give testimony ... which he refuses to give ... on the basis of his privilege against self-incrimination." 18 U.S.C. § 6003(a). A judge, therefore, cannot review for abuse of discretion an executive decision to deny or grant immunity to a particular witness. *United States v. Herman*, 589 F.2d 1191 (3d Cir. 1978), *cert. denied*, 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979). Although a few cases have fashioned two very narrow exceptions,[2] the great weight of authority also

769, 772 (2d Cir. 1980); *see also United States v. Davis*, 623 F.2d 188 (1st Cir. 1980); *United States v. Lenz*, 616 F.2d 960 (6th Cir. 1980), *cert. denied*, 447 U.S. 929, 100 S.Ct. 3028, 65 L.Ed.2d 1124 (1980); *United States v. Herman*, 589 F.2d 1191 (3d Cir. 1978), *cert. denied*, 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979); *United States v. Wright*, 588 F.2d 31 (2d Cir. 1978), *cert. denied*, 440 U.S. 917, 99 S.Ct. 1236, 59 L.Ed.2d 467 (1979); *United States v. Smith*, 542 F.2d 711 (7th Cir. 1976); *United States v. Alessio*, 528 F.2d 1079 (9th Cir. 1976), *cert. denied*, 426 U.S. 948, 96 S.Ct. 3167, 49 L.Ed.2d 1184 (1976).

**2.** *Government of Virgin Islands v. Smith*, 615 F.2d 964 (3d Cir. 1980); *United States v. La Duca*, 447 F.Supp. 779 (D.N.J.1978), *aff'd on other grounds sub nom. United States v. Rocco*, 587 F.2d 144 (3d Cir. 1978), *cert. denied*, 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979). *United States v. Lenz* and *United States v. Alessio*, both *supra*, reserved the question of the effect of deprivation of due process by the Government's failure to grant immunity to key defense witnesses.

holds that a judge cannot confer immunity on his own initiative. *United States v. D'Apice*, 664 F.2d 75 (5th Cir. 1981); *United States v. Turkish*, 623 F.2d 769–772 (2d Cir. 1980); *United States v. Housand*, 550 F.2d 818 (2nd Cir. 1977), *cert. denied*, 431 U.S. 970, 97 S.Ct. 2931, 53 L.Ed.2d 1066 (1977). Is the military rule on witness immunity different from the civilian rule?

Although the lead opinion refers to the federal civilian rule, it nonetheless deems it "[a] ... preliminary question of importance" to determine "the nature of a grant of immunity in the military justice system." 13 M.J. 46, 52. I am not sure whether this inquiry constitutes a holding or only an intimation that the military rule is different from the civilian rule. Either circumstance impels me to declare my conviction that the military rule operates the same way as the federal civilian rule.

A grant of immunity to a witness asserting his privilege against self-incrimination, independent of the federal civilian rule, was indirectly recognized in paragraph 148e, Manual for Courts-Martial, United States, 1951. Under the caption, *"Interest or bias,"* as a disqualification of a witness, it provided: "The fact that a witness has obtained a promise of immunity without which he may not have been willing to testify does not disqualify him as a witness." However, the power to compel testimony from a recalcitrant witness relying upon the right against self-incrimination through the medium of the grant of immunity was first considered in *United States v. Kirsch*, 15 U.S.C.M.A. 84, 35 C.M.R. 56 (1964). There, the Court reviewed the background and text of the Uniform Code and concluded that the plethora of powers conferred upon a convening authority equated to the "pardon" power of the Executive. To me, that enumeration identifies the substantive nature of a grant of immunity and aligns it precisely with the federal civilian rule. My conviction is supported by a provision of the civilian law.

This Court has been included in the definition of "court of the United States" (18 U.S.C. § 6001(4)) to which the immunity provisions apply. Although it is unlikely that any proceedings in this Court might necessitate a grant of immunity to a witness at the request of the United States attorney,[3] inclusion of this Court with all the civilian courts identified in the statutory definition, represents to me congressional identification of the military grant of immunity with the civilian grant. It follows, therefore, that a military judge cannot review, for abuse of discretion, the decision of a convening authority to grant or deny immunity to a witness, whether the request for immunity is presented by trial counsel or the accused. *United States v. Smith*, 542 F.2d 711 (7th Cir. 1976); *United States v. Alessio*, 528 F.2d 1079 (9th Cir. 1976), *cert. denied*, 426 U.S. 948, 96 S.Ct. 3167, 49 L.Ed.2d 1184 (1976). Neither can the judge grant immunity on his own initiative. *United States v. D'Apice, supra; United States v. Lenz*, 616 F.2d 960 (6th Cir. 1980), *cert. denied*, 447 U.S. 929, 100 S.Ct. 3028, 65 L.Ed.2d 1124 (1980). What, then, may a military judge do when a recalcitrant witness requested by the accused can apparently provide material, exculpatory testimony, but refuses to testify because of self-incrimination?

Defense-witness immunity increasingly has been the subject of judicial opinion and commentary. The cases and commentary are noted in *United States v. Turkish, supra*. I need not review them. Suffice it to say that I agree with these determinations by the Court of Appeals in *Turkish*:

1. The Sixth Amendment right to bring a witness into court "does not carry with it the additional right to displace a proper claim of privilege, including the privilege against self-incrimination." *Id.* at 774.

2. The principle of fairness and the concept that a trial is a search for truth inher-

---

3. Some of the services note that the Department of Justice has construed the Memorandum of Understanding between the Department of Justice and the Department of Defense of November 1955 to require coordination "with the Department of Justice through the medium of the staff judge advocate and the local United States Attorney concerned" in respect to cases within the scope of the memorandum. Para. 2–8, AFM 111–1 (C. 3).

ent in the due process protection of the Fifth Amendment do not:

(a) Mandate "equalizing" the imbalance between the Government and the accused in respect to a grant of immunity any more than it does in respect to other enforcement procedures, such as search and seizure [*id.; cf. Wardius v. Oregon*, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973), *United States v. De Palma*, 476 F.Supp. 775 (S.D.N.Y.1979), *reversed sub nom. United States v. Horwitz*, 622 F.2d 1101 (2d Cir. 1980)][4]; or,

(b) Require the Government "to assist the defense in extracting from others evidence the Government does not have." 623 F.2d at 775.

As no constitutional provision confers upon an accused the right to compel immunity of a witness who asserts the privilege of self-incrimination and no provision of the Uniform Code of Military Justice or the Manual for Courts-Martial, United States, 1969 (Revised edition), accords such right, I am certain that the trial judge cannot dismiss the charges for a refusal of the Government to immunize the · witness at accused's request. *See United States v. Redding*, 11 M.J. 100 (C.M.A.1981). However, other actions short of dismissal are within the judge's authority; one such action is to continue the case to such time as the circumstances indicate are appropriate. Here, for example, the recalcitrant witness had been convicted of the same offense with which the accused was charged. If that conviction became final, the witness would have no further right to claim the right against self-incrimination and could be compelled to testify at the accused's trial. Similarly, the trial judge can, with the accused's consent, declare a mistrial if the proceedings were then past the point of attachment of jeopardy; in rescheduling the case for trial, he can accord the accused a further reasonable opportunity to request immunization of the witness, as was done here in respect to the witness Paul.

Turning to this accused's attack upon the trial judge's handling of his request for immunity of Holodinski, I would not inquire, as my Brother does, into whether defense counsel sufficiently established that Holodinski's probable testimony would have exculpated the accused and presented no danger to the public interest. As the accused did not request a continuance, there is obviously no need to inquire into whether a denial of a continuance, on the showing made by the accused, would have been an abuse of discretion by the trial judge. *United States v. Knudson*, 4 U.S.C.M.A. 587, 16 C.M.R. 161 (1954).

For the reasons indicated, I would answer in the negative that part of subdivision *a* of the certified question which asks whether a military judge has authority to immunize, at accused's request, a prospective defense witness who refuses to testify in reliance upon his right not to incriminate himself. I would also answer in the negative that part of subdivision *b* which asks whether a military judge can properly review a convening

---

4. Horwitz had requested limited use immunity be granted to two defense witnesses who refused to testify on Fifth Amendment grounds.

"The prosecutor ... rejected a suggestion by the" trial judge that the witnesses "be granted ... use immunity, noting that both ... were the subjects of a continuing investigation." After conviction Horwitz moved for a new trial, "arguing ... that he had been denied a fair trial by the government's refusal to immunize" his witnesses. 622 F.2d at 1104. The trial judge granted his motion for a new trial. Although finding no bad faith in the prosecutors, the trial judge concluded, "Horwitz was deprived of due process of law because broad immunity was granted to government witness Brodsky and, to a lesser extent, Kosman, while two witnesses to the events at issue sought to be called by Horwitz were unavailable because of the government's failure to grant them even limited use immunity." Quoted, *id.* at 1104. The Court of Appeals reversed. It cited *Turkish* for the propositions: (1) "due process considerations of fairness seldom, if ever, require immunization of potential defense witnesses," *id.* at 1105; and (2) "trial judges should summarily reject claims for defense witness immunity whenever the witness for whom immunity is sought is an actual or potential target of prosecution." 622 F.2d at 1105, quoting 623 F.2d at 778. The case was remanded to the trial judge to "consider entering a judgment of conviction upon the jury verdict" "if Horwitz' reverse immunity claim is found to be untenable in light of *Turkish.*" *Id.* at 1106.

authority's denial of immunity to a defense witness for an abuse of discretion.

My negative answers make unnecessary restatement of my views of the actions a military judge can take in response to an accused's representation that a witness desired by him could provide material, exclupatory testimony, but refuses to do so because he fears self-incrimination. I agree to affirming the decision of the Court of Military Review.

EVERETT, Chief Judge (dissenting):

I

Paragraph 68h of the Manual for Courts-Martial, United States, 1969 (Revised edition) authorizes an officer exercising general court-martial jurisdiction to promise or grant immunity. This immunity is transactional and forbids prosecution of the offenses disclosed. While such an "immunity bath" may enlist enthusiastic cooperation from the witnesses immunized, the obvious disadvantage is that a culprit may thereby escape prosecution—even though the Government already possesses adequate information to establish his guilt at the very time that he is granted immunity.

For many decades, it was assumed that the decisions in *Brown v. Walker*, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819 (1896), and *Counselman v. Hitchcock*, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892), required that transactional immunity be granted as a prerequisite for compelling a witness to give self-incriminating testimony. During that period more than fifty federal statutes and many state laws were enacted which authorized transactional immunity under varying circumstances. *See Kastigar v. United States*, 406 U.S. 441, 447, 92 S.Ct. 1653, 1657, 32 L.Ed.2d 212 (1972); Green, *Grants of Immunity and Military Law*, 53 Mil.L.Rev. 1, 7 (1971). Then, in *Murphy v. Waterfront Commission*, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964), the Supreme Court indicated that testimonial im-

munity—which only shields the witness from use of his testimony or other evidence derived therefrom—would suffice as a basis to compel a witness to give testimony which he claimed would be incriminating.

Accordingly, Congress replaced the diverse laws concerning immunity grants with the Federal Immunity of Witnesses Act of 1970, which was passed as part of the Organized Crime Control Act of 1970, Public Law No. 91–452, 84 Stat. 926, and is codified in 18 U.S.C. § 6001–6005. Under this Act, whose constitutionality was upheld in *Kastigar v. United States, supra*, a witness may be compelled to testify under a grant of immunity which protects him against the use in criminal proceedings of the testimony he gives and of any evidence derived therefrom.[1] If the witness fails to testify after receipt of the order granting immunity, he can be punished for contempt. If he testifies falsely, he can be prosecuted for perjury. Moreover, he remains amenable to prosecution for offenses as to which the Government can prove its case by evidence independent of his testimony and its fruit.

The Federal Immunity of Witnesses Act authorizes immunity "in a proceeding before or ancillary to—(1) a court or grand jury of the United States, (2) an agency of the United States, or (3) either House of Congress, a Joint Committee of the two Houses, or a committee or a subcommittee of either House." 18 U.S.C. § 6002. "[C]ourt of the United States" is defined to include federal district courts, bankruptcy courts, and several other designated courts, including "the Court of Military Appeals." 18 U.S.C. § 6001(4). However, courts-martial are not included. An "agency of the United States" refers to "any executive department as defined in section 101 of title 5, United States Code, a military department as defined in section 102 of title 5, United States Code," and a variety of specified federal boards and commissions. 18 U.S.C. § 6001(1). Whether these definitions are

---

1. However no protection is granted—nor need be granted, *Ullmann v. United States*, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956)—with respect to civil proceedings or use of such evidence other than in a criminal case. *See* 18 U.S.C. § 6002.

broad enough to include a court-martial is uncertain. *See* Green, *supra* at 27. If courts-martial are not included within the coverage of this Act, which was designed to supersede prior federal immunity legislation, did it preempt the power of military commanders to grant immunity under paragraph 68*h* of the Manual? Also, did the Act authorize, prohibit, or otherwise affect grants of testimonial immunity for witnesses appearing at trial by court-martial?

The confusion generated by the Federal Immunity of Witnesses Act is compounded by the circumstance that, although the Supreme Court has embraced testimonial immunity, the Manual for Courts-Martial still contains no explicit provision for it. Paragraph 68*h* still refers only to transactional immunity. Mil.R.Evid. 301(c)(1), in dealing with the privilege against compulsory self-incrimination, provides:

> *Immunity generally.* The minimum grant of immunity adequate to overcome the privilege is that which under either paragraph 68*h* of this Manual or other proper authority provides that neither the testimony of the witness nor any evidence obtained from that testimony may be used against the witness at any subsequent trial other than in a prosecution for perjury, false swearing, the making of a false official statement, or failure to comply with an order to testify after the military judge has ruled that the privilege may not be asserted by reason of immunity.

Since paragraph 68*h* of the Manual—as earlier noted—does not even refer to testimonial immunity, the most that can be said for the cross-reference to that provision is that it implies that the power to grant transactional immunity includes the power to grant the lesser immunity against the use, or derivative use, of the immunized testimony. According to the Draftsmen's analysis of Mil.R.Evid. 301(c)(1), the reference to "other proper authority" in the Rule "recognizes

that immunity may be granted under federal statutes as well as under paragraph 68*h* of the Manual." Obviously, however, this recognition does not help much if federal statutes concerning immunity do not themselves apply to courts-martial—an issue which, as already noted, still seems to remain open.

Despite the possible uncertainty as to a legal basis for so doing, grants of testimonial immunity are being made by convening authorities—as we are well aware from examining various records of trial. Indeed, in the case at hand, such immunity was granted to two prosecution witnesses—Privates Crone and Gary—and to a defense witness—Corporal Paul.

Of course, if a witness testifies before a court-martial pursuant to an order premised on an unauthorized grant of immunity, he nonetheless will be protected from the use of his testimony against him. Article 31(a) of the Code, 10 U.S.C. § 831(a), provides, "No person subject to this chapter may compel any person to incriminate himself or to answer any question the answer to which may tend to incriminate him"; Article 31(d) dictates, "No statement obtained from any person in violation of this article, or through the use of coercion, unlawful influence, or unlawful inducement may be received in evidence against him in a trial by court-martial." Thus, the immunized testimony cannot itself be used against the accused in a trial by court-martial.[2] Moreover, as construed by our Court, the exclusionary rule under Article 31(d) applies to the fruit of an incriminating statement. *Cf. United States v. Haynes*, 9 U.S.C.M.A. 792, 27 C.M.R. 60 (1958). Thus, because of Article 31(d), a witness who is compelled to testify in a court-martial—whether or not the official who exercised such compulsion had a legal right to do so—will receive testimonial immunity akin to that called for by *Murphy v. Waterfront Commission, su-*

---

**2.** Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831, does not purport to extend this prohibition to use of the evidence in a criminal proceeding in a federal district court or in a state court. Perhaps, under the reason-

ing of *Murphy v. Waterfront Commission*, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964), the statutory exclusionary rule would be extended to other federal courts and to state courts.

*pra*, and authorized by 18 U.S.C. § 6003 in those proceedings to which that section applies. However, the existence of this protection does not adequately answer the issue of whether there is a right to grant testimonial immunity; instead it leaves open whether a witness who declines to testify, even though he is ordered to do so and even though under Article 31(d) any statements he makes cannot be used as evidence against him, may be punished.[3]

Paragraph 68*h* of the Manual may provide some basis for grants of testimonial immunity by an officer exercising general court-martial jurisdiction. The premise would be that, since this official can grant the more sweeping transactional immunity, he must likewise have the power to grant testimonial immunity. Of course, this rationale assumes that enactment of 18 U.S.C. §§ 6001–6005 was not intended by Congress to preempt the field of testimonial immunity—an assumption which is not indisputable. Moreover, it can be argued that the power to forestall prosecution is different in kind from the power to control evidence to be received in future judicial proceedings, so that the commander's possession of the former power does not necessarily signify that he also possesses the latter.

In one way, the provisions of the Federal Immunity of Witnesses Act tend to support the view that testimonial immunity can be granted in the administration of military justice. Certainly, it would be odd for Congress to authorize such immunity for a number of courts—including courts of appeals, such as our Court, which have almost no occasion to grant testimonial immunity—and to administrative agencies—including "military departments"—but not to authorize the grant of such immunity in trials by courts-martial. However, the failure to enumerate courts-martial in the definition of "courts of the United States" in 18 U.S.C. § 6001(1) gives rise to a negative implication that courts-martial were not within the purview of the Act. On the other hand, if courts-martial are an "agency of the United States," rather than a "court of the United States," such treatment would be at odds with an underlying theme of the Uniform Code of Military Justice. *Cf. United States v. Bennett*, 12 M.J. 463, 468 (C.M.A.1982) (which interprets "court of the United States"). Furthermore, under 18 U.S.C. § 6004(a), a grant of testimonial immunity in a court-martial would then require "the approval of the Attorney General"; and obtaining such approval has not heretofore been the prevailing practice.

Perhaps Article 46 of the Code provides a source of authority for grants of testimonial immunity in stating:

> Process issued in court-martial cases to compel witnesses to appear and testify and to compel the production of other evidence shall be similar to that which courts of the United States having criminal jurisdiction may lawfully issue.

The grants of testimonial immunity authorized by the 1970 legislation might be subsumed under the term "[p]rocess ... to compel witnesses to appear and testify"; and such a construction would avoid the irrational gap which otherwise is left by a literal construction of the definitions in 18 U.S.C. § 6001.

Furthermore, since a court-martial is a "court," it may possess some inherent authority to grant immunity in accord with *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). There the Supreme Court ruled that testimony given by a defendant in order to establish his standing to object to an unreasonable search and seizure cannot thereafter be received in evidence to establish his guilt. By authorizing this judicially enforced testimonial immunity, the Supreme Court laid a foundation for requiring that a defendant establish his standing—even if, in so doing he is, as a practical matter, "compelled" to incriminate himself. *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65

---

**3.** Moreover, since Article 31 applies only to servicemembers, it would be irrelevant in seeking immunized testimony from a civilian witness.

L.Ed.2d 619 (1980)[4]; *Simmons v. United States, supra.* Similarly, in *Murphy v. Waterfront Commission, supra*, the Court judicially established an immunity from use in a federal prosecution of testimony which a state-created commission sought to compel by granting transactional immunity as to violations of state law.[5]

Obviously, it would be desirable if the Federal Immunity of Witnesses Act were promptly amended to include courts-martial explicitly within its purview and if the Manual for Courts-Martial were revised to deal more specifically with testimonial immunity. Nonetheless, upon reading Article 46 of the Code in tandem with the Federal Immunity of Witnesses Act, *supra*, and against the backdrop of a court's inherent authority to enforce testimonial immunity under some circumstances, I am convinced that a sound legal basis exists for granting testimonial immunity in connection with trial by court-martial.[6]

Article 46 provides that witnesses in courts-martial shall be obtained "in accordance with such regulations as the President may prescribe." In view of the role which the President has assigned convening authorities and military judges in compelling the attendance of witnesses, *see* para. 115*a*, Manual, *supra*, I conclude that these are the officials empowered to determine whether testimonial immunity will be granted a witness who is to testify before a general or special court-martial.

## II

Even though testimonial immunity does not preclude prosecution, it may hinder subsequent efforts by the Government to prosecute the immunized witness. *See* Note, *The Due Process Right to the Immunization of Defense Witnesses*, 22 B.C.L.Rev. 299 (1981); Comments, *Defense Witness Immunity and the Right to a Fair Trial*, 129 U.Pa.L.Rev. 377 (1980) (hereafter Comments). In the later prosecution of an immunized witness, the Government bears the burden of proving that its evidence did not stem from his immunized testimony, *Kastigar v. United States, supra* ; if it fails to do so, the evidence will be excluded and the Government cannot establish its case. Indeed, to avoid defense arguments that the government's evidence is derived from the immunized testimony, the prosecutor in the case where the immunized testimony was given may be replaced by another prosecutor to conduct the subsequent trial of the immunized witness; sometimes, before testimony is given pursuant to a grant of immunity, a prosecutor will in some way certify or record his available evidence so that he will be able to establish subsequently that this evidence was obtained independent of the immunized testimony. *Id.*

Of course, before asking that a prospective government witness be immunized, trial counsel will undoubtedly consider the likelihood that the witness will be prosecuted and, if so, whether a grant of immunity may impede that prosecution because of probable difficulty for the Government in establishing an independent source for the evidence that will be presented at that time. On the other hand, a defense counsel will not labor under such constraints in deciding whether to ask that a witness be immunized. Indeed, it is conceivable that a request for immunizing a witness may be, in part, a defense tactic intended to discon-

---

4. By establishing this testimonial immunity, the Court was enabled to overrule *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), which gave automatic standing to a defendant charged with an offense in which possession was an essential element. *See United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980).

5. The occasion to create such immunity arose from the holding in *Murphy* that, to be valid, a grant of immunity by a state must give protec-

tion in connection with federal prosecutions, and vice versa.

6. Under the reasoning of *Middendorf v. Henry*, 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976), whereunder trial by summary court-martial is not a "criminal prosecution" for purposes of the Sixth Amendment, I doubt that testimonial immunity can be granted in connection with such a trial, regardless of the summary court's power to subpoena witnesses and administer oaths.

cert or inconvenience the prosecutor by posing a possible impediment to an intended future prosecution.[7] Accordingly, in ruling on a defense request for a witness, a convening authority or military judge should give great weight to any prosecution assertion that the testimonial immunity will impede the contemplated prosecution of the witness who is claiming his privilege against self-incrimination.[8] Nonetheless, since testimonial immunity leaves the prosecutor "in substantially the same position as if the witness had claimed his privilege in the absence of a . . . grant of immunity," *see Murphy v. Waterfront Commission, supra* 378 U.S. at 79, 84 S.Ct. at 1609, the prosecutor's wishes need not be determinative. In *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), the Supreme Court ruled that due process had been violated by a state procedural rule which denied the defendant a fair opportunity to present available testimony in his behalf. Likewise, "due process" and "fair trial" considerations cannot be ignored in disposing of a request that testimonial immunity be granted a defense witness. *See* Note, *supra* ; Comments, *supra*.[9] Also, the Sixth Amendment provides some support for a claim that, if prosecutors can obtain testimonial immunity for government witnesses, then an accused is entitled to the benefits of a similar procedure as part of his right "to have compulsory process for obtaining witnesses in his favor." [10]

However, an accused servicemember's constitutional rights need not be considered further since in military justice, Article 46 provides an accused this statutory right:

> The trial counsel, the defense counsel, and the court-martial shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe.

In my view, this language requires that, if a procedure exists—whether or not properly authorized by statute—whereby a prosecutor can obtain testimonial immunity for government witnesses, the same procedure must be made available to the defense. Moreover, the same criteria applied to requests by the Government should be employed for requests by an accused.[11]

Where a prospective government witness is involved, the criterion of effect on a future prosecution will be applied automatically by the trial counsel in deciding whether even to request immunity for the witness. Where the defense requests immunity, the responsibility will rest on the trial counsel to inform the convening authority or military judge if a grant of testimonial immunity would probably impede a prospec-

---

7. We must take into account the possibility that—regardless of the ethics of doing so—a defense counsel may seek to assert certain rights as a means of enhancing the government's willingness to plea bargain. *See, e.g., United States v. Killebrew*, 9 M.J. 154 (C.M.A. 1980).

8. Other factors to be taken into account would include the seriousness of the offense being tried as compared to the offenses for which the witness might be prosecuted and whether it appears likely that the testimony to be elicited from the witness, if he is granted immunity, will be material and clearly exculpatory of the accused.

9. A request for testimonial immunity is quite different from a request for transactional immunity. The latter involves a decision that one person shall receive complete immunity from prosecution in order to establish the guilt or innocence of another. In such a situation, the discretion of prosecutors should be almost absolute; the right to compel immunity, if it exists at all, undoubtedly is limited to a situation where defendant is charged with a capital offense or other serious felony and the prospective witness claims privilege only as to some minor offense.

10. This contention relies on *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), which held that an arbitrary evidentiary rule which precluded the defendant from offering certain exculpatory evidence violated his Sixth Amendment right to process, as incorporated in the Fourteenth Amendment. The preeminent analysis of the Sixth Amendment right to "compulsory process"—as interpreted in *Washington v. Texas, supra*—is offered in Westen, *The Compulsory Process Clause*, 73 Mich.L.Rev. 71, 166–70 (1974). *See United States v. Vietor*, 10 M.J. 69 (C.M.A.1980).

11. As noted earlier, a major criterion should be whether the grant of testimonial immunity will impede significantly the prospective prosecution of the immunized witness.

tive prosecution of the immunized witness. In that event, the convening authority or judge should give weight to the government's representations; if they appear to be well-founded, the request should be treated in almost the same manner that a request for transactional immunity would be.

### III

In the case at bar, the military judge misconceived his responsibilities—a not surprising occurrence in light of the general confusion surrounding grants of immunity in military law. For one thing, the judge apparently concluded that he possessed no authority to rule on testimonial immunity and that only the convening authority could do so. Nonetheless, in the instance of one defense-requested witness. Corporal Paul—the judge sought to do indirectly that which he did not believe he was authorized to do directly. Had his premise been correct as to his lack of authority, the judge would in my view have erred in the remedy that he employed. *See United States v. Redding,* 11 M.J. 100 (C.M.A.1981). However, since under my analysis the military judge himself possessed the authority to grant testimonial immunity and since that witness did testify pursuant to an immunity grant from the convening authority, the military judge's error is immaterial.

On the other hand, the military judge committed prejudicial error by his ruling on the request that Private Holodinski be granted testimonial immunity. Of course, he did not accede to the trial counsel's fallacious contention that the defense request should be denied because the witness would probably testify falsely at the court-martial. Whatever the valid reasons may be to deny a request for immunized testimony, it cannot be predicated on an assertion by trial counsel that, if immunized, the witness probably will commit perjury.[12] Unfortunately, however, the military judge concluded that, although testimonial immunity should be granted as to Corporal Paul—who had not yet been prosecuted—he should uphold its denial for Holodinski—who had been tried and convicted but whose conviction was not yet final on appeal.

Of course, Holodinski still retained his privilege against self-incrimination with respect to offenses which were the subject of his conviction pending appeal; but the circumstance that the Government already had convicted Holodinski reduces to the vanishing point the validity of any contention that he could not be convicted without the use of the immunized testimony. Admittedly, the possibility existed that Holodinski's conviction could be set aside and a rehearing ordered, in which the Government might seek to present additional evidence and, in that event, the prosecution would bear the burden of establishing that the additional evidence was not derived from testimony given by Holodinski pursuant to an immunity grant.[13] This contingency is remote enough that it adds little weight when balanced against the seeming materiality of Holodinski's testimony. In short, the military judge obviously denied the defense request for Holodinski's immunized testimony because of his misconception of the applicable law: consequently, Villines was denied the testimony of an important eyewitness.[14]

---

12. The lead opinion agrees with this proposition, but nevertheless upholds the convening authority's denial of immunity, even though no reasons were given for the denial; so presumably it was based on the improper grounds expressed to the convening authority by the trial counsel.

13. Of course, there is nothing in the record to suggest that the convening authority had this in mind when he denied the defense request that he immunize Holodinski. At this late date, I believe it inappropriate for us to try to supply a justification for the convening authority's ac-

tion. Likewise, it is impossible for me to understand the trial judge's distinction between testimonial immunity for a witness who has already been convicted and for three witnesses who have not even been tried. The distinction is at 180 degrees with the ruling.

14. According to the lead opinion Holodinski's testimony was "potentially material" but not shown by appellant to be "clearly exculpatory." 13 M.J. 46, 56. Of course, when a prospective witness will not speak, it is very difficult to establish in advance that his testimony will be "clearly exculpatory."

## IV

My answers to the certified questions have been adequately presented in the foregoing discussion; so they need not be reiterated here. Under the circumstances, I would not allow the findings of guilty to stand; I would remand the case either for a rehearing or, at the least, for a *DuBay* hearing which can inquire into the testimony that Holodinski would have given.[15]

---

15. *See United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967); *see also United States v. Killebrew, supra; United States v. Vietor, supra.* Presumably, the conviction of Holodinski has become final by now, so he no longer will have a privilege against self incrimination. *See* Mil.R.Evid. 301(c). If not, the defense request for testimonial immunity can be reconsidered by the military judge in light of the situation that exists at the time of the rehearing.