**UNITED STATES, Appellee,**

v.

**James A. ANDREAS, Captain, U.S. Air Force, Appellant.**

No. 41,212.
ACM 22871.

U. S. Court of Military Appeals.

Jan. 31, 1983.

For Appellant: *Lieutenant Colonel Patrick C. Sweeney* (argued); *Colonel George R. Stevens, Captain Douglas H. Kohrt.*

For Appellee: *Major Michael J. Hoover* (argued); *Colonel James P. Porter, Lieutenant Colonel Bruce R. Houston* (on brief).

*Opinion of the Court*

EVERETT, Chief Judge:

Appellant's general court-martial, which was convened by the Commander, Thirteenth Air Force, Clark Air Base, Philippines, sat at Norton Air Force Base, California. Contrary to his pleas, Andreas was convicted of conspiring with Candice Vance to wrongfully transfer cocaine and of three specifications of wrongful use of cocaine, contrary to Articles 81 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 934, respectively. He was acquitted of conspiring and attempting to wrongfully introduce cocaine into Clark Air Base. The sentence adjudged was dismissal from the Air Force, confinement at hard labor and forfeitures of $750.00 pay per month for 18 months. The convening authority reduced the period of confinement and the period and amount of the forfeitures; otherwise he approved the findings and sentence. After the Court of Military Review affirmed, we granted review of these issues:

I

WHETHER THE COURT OF REVIEW WAS CORRECT IN RULING THAT IMMUNITY OFFERED BY THE STAFF JUDGE ADVOCATE SERVING THE SPECIAL COURT–MARTIAL CONVENING AUTHORITY DID NOT DISQUALIFY THE GENERAL COURT–MARTIAL CONVENING AUTHORITY FROM REVIEWING AND TAKING FINAL ACTION ON THE APPELLANT'S CASE.

II

WHETHER IN A PROSECUTION FOR USE OF A HABIT–FORMING NARCOTIC DRUG, TO WIT: COCAINE

UNDER ARTICLE 134 AND FOR CONSPIRACY TO TRANSFER A HABIT-FORMING NARCOTIC DRUG, TO WIT: COCAINE, THE CONGRESSIONAL CLASSIFICATION OF COCAINE AS A HABIT-FORMING NARCOTIC DRUG IS MERELY EVIDENCE THEREOF AS A MATTER OF FACT, AND IS NOT DETERMINATIVE THEREOF AS A MATTER OF LAW.

## III

DID APPELLANT'S APPELLATE DEFENSE COUNSEL COMMIT ERROR WHICH MATERIALLY PREJUDICED THE SUBSTANTIAL RIGHTS OF THE APPELLANT WHEN HE FAILED TO ASSIGN, AS ERRORS FOR REVIEW, SIX ERRORS ENUMERATED BY THE APPELLANT IN HIS REQUEST FOR APPELLATE DEFENSE COUNSEL?

## I

### A

At trial the chief witness for the Government was Miss Candice Vance, a civilian residing in California. In August 1979 she had been approached by Special Agent Edwards of the Air Force Office of Special Investigations (OSI), who was accompanied by Agent Dijamco of the Drug Enforcement Administration (DEA). "[T]hey had a list of names," including those of four officers, with whom Miss Vance allegedly had been involved in cocaine transactions and use while she had been in the Philippines some months before. She denied involvement but immediately after the interview she contacted an attorney, Mr. Lawrence Taylor.

On November 23, 1979, charges were preferred against appellant by Colonel Jose Martinez, commander of the hospital at Clark Air Base, where Andreas was assigned. The charges were sworn to before Major Richard Marshall, deputy staff judge advocate at Clark Air Base. On November 27, an officer was appointed to conduct the Article 32 investigation.

Then in January 1980, Miss Vance had a lengthy meeting at Mr. Taylor's office in Los Angeles with Major Marshall and Major William Kip At Lee, who was a member of the Air Force Judiciary assigned to Travis Air Force Base, California, and who later represented the Government in appellant's trial.

This meeting in January 1980 was prefaced by certain assurances given to Miss Vance by Major Marshall and recorded as follows:

Mr. Lawrence Taylor, Attorney, representing Miss Candice Vance.

Also present while recording with full knowledge of all of the participants in the room is Major Kip At Lee.

At this time Mr. Taylor will make some preliminary remarks.

Prior to entering into interrogation of Miss Vance, we have a series of stipulations by and between myself acting on behalf of Miss Vance and Major Marshall, representing the Judge Advocate General, Clark Air Force Base.

The first condition for any use of the statements and for the taking of the statements themselves are that Miss Vance will be granted full and unconditional transactional and use immunity. Unconditional except for the completion of her truthful testimony according to conditions stated hereafter in the stipulations, and according to the truthful statement to be taken today. Is that stipulated to, Major?

Maj M: That is stipulated to.

Mr. T: Second, this immunity, that is full and unconditional transactional and use immunity is to be obtained from a representative of the U.S. Government, that is the United States Attorney; secondly, the Philippine Government; and third, a representative of a prosecuting agency in the state of California, specifically either an assistant attorney general or a deputy

district attorney of a county of Los Angeles. Is that a stipulation, Major?

Maj M: This is stipulated to.

Mr. T: Third, that Miss Vance does and will be granted—does have and will be granted the right to have an attorney present throughout her testimony at any courts-martial, and this attorney will have the right to interrupt proceedings at any time for consultation with Miss Vance. Is that stipulated to?

Maj M: That is stipulated to.

Mr. T: Fourth, that her testimony be limited to a courts-martial of three officers with the last names of Andreas, Clements and Kennedy, and no others. Is that stipulated to?

Maj M: That is stipulated to.

Mr. T: Fifth, that all courts-martial testimony to be given by Miss Vance be given within an area 100 miles from Los Angeles, and that all testimony be given within 100 days from today's date. Is that stipulated to?

Maj M: That is stipulated to.

Mr. T: Now as to the taking of the deposition today, is it stipulated that this is a prosecutorial interrogation with the focus of suspicion centered upon Miss Vance, and that no Miranda rights have been given either by myself or by you, Major Marshall. Is that correct?

Maj M: That is correct.

Mr. T: Second, do you stipulate that this statement taken today from Miss Vance is taken in violation of her Fifth Amendment right under the United States Constitution?

Maj M: That is correct.

Mr. T: Third, is it stipulated that nothing in this statement is ever to be used against her by any agency or anyone in any agency of the Department of Defense or by any other governmental agency unless so ordered by a Federal court?

Maj M: That is correct.

Mr. T: Fourth, is it stipulated that the contents of this statement to be given today never be released to any agency other than an agency within the Department of Defense?

Maj M: That is correct.

Mr. T: Fifth, is it stipulated that the sole purpose and use of the statement to be given is a) to determine the scope of Miss Vance's information, and b) to act as a guide to the subsequent accuracy of any testimony she may give?

Maj M: That is correct.

Mr. T: And finally, is it stipulated that Miss Vance or her counsel receive a copy of the transcript of any statement given today?

Maj M: That is correct.

Mr. T: It is understood by myself and by Major Marshall that Major Marshall can use a transcript of this statement in obtaining the proper immunity from the U.S. Government, from the Philippine Government, and from the State of California. That is, he may use it for temporary viewing by representatives of those agencies not for permanent retention by those agencies. Is that correct?

Maj M: That's correct.

On February 15, 1980, charges were re-preferred by Colonel Martinez. On March 21, the report of the Article 32 investigating officer was signed and on April 9, 1980, the charges were referred for trial by a general court-martial appointed on that same date.

Near the beginning of the trial, which commenced on May 29, 1980, the military judge inquired whether Miss Vance invoked her constitutional "privilege against self-incrimination." Upon receiving an affirmative response, the judge informed the witness:

I have here an exhibit, which is marked as Appellate Exhibit V, from Philip B.

Heymann, Assistant Attorney General, Criminal Division, United States Department of Justice, giving this court authority to order you to give testimony pursuant to 18 United States Code 6004, and the court hereby, under that authority, orders you to testify in this case.[1]

This appellate exhibit was a letter of February 12, 1980, to Major Marshall, wherein Mr. Heymann stated that

[y]our request for authority to issue an order requiring Candice Diane Vance to give testimony or provide other information pursuant to 18 U.S.C. 6004 in the General Court-Martial of Captain James Andreas, USAF, being conducted in the Central District of California and in any further proceeding resulting therefrom or ancillary thereto is hereby approved pursuant to the authority vested in me by 18 U.S.C. 6002, 6004 and 28 C.F.R. 0.175.

After appellant was convicted, the convening authority performed the post-trial review of the case. The defense now contends that he was disqualified to do so.

### B

■ Since Miss Vance was a civilian, she was not subject to trial by court-martial. *Reid v. Covert,* 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957). Therefore, no occasion existed for any military official to grant either transactional or testimonial immunity with respect to any trial by court-martial. However, Major Marshall successfully attempted to obtain from the Department of Justice its approval for granting her testimonial immunity pursuant to 18 U.S.C. §§ 6001–6004.

In *United States v. Newman,* 14 M.J. 474 (C.M.A.1983), we have ruled that a grant of testimonial immunity—which protects an accused from use against him of his testimony or evidence derived therefrom—does not disqualify a convening authority from reviewing a record of trial. Therefore, even if in some way we attribute to the convening authority the grant of testimonial immunity for Miss Vance which was ultimately approved by the Department of Justice, he would not be disqualified thereby from reviewing appellant's record of trial.

We reach the same conclusion about the effect of the assurances of transactional immunity which were extended to Miss Vance by Major Marshall—apparently with the concurrence of Major At Lee. Apart from the assurance of immunity from trial by court-martial [2]—an assurance which was redundant since Miss Vance, as a civilian, was not subject to military jurisdiction— Major Marshall obviously could not fulfill any of the promises of transactional immunity. Current Federal law contemplates grants of testimonial, rather than transactional, immunity as to prosecutions in the Federal District Courts. Whatever the provisions of immunity laws in the State of California or the Republic of the Philippines, we are confident that they do not empower American military officers to grant immunity from prosecution in the State or Filipino courts. Indeed, the absence of authority for Major Marshall to grant transactional immunity to Miss Vance should have been apparent to all concerned.[3]

We do not perceive why in the present case the clearly invalid promises of transactional immunity made by Major Marshall should disqualify the convening authority.

---

1. As to the authority of the military judge to issue such an order, *see* the discussion in *United States v. Villines,* 13 M.J. 46, 59 (C.M.A. 1982) (Everett, C.J., dissenting).

2. Of course, there would be a considerable question as to whether the assurances given by Major Marshall and tacitly concurred in by Major At Lee would bind the commander exer-

cising general court-martial jurisdiction. *Cf. Cooke v. Orser,* 12 M.J. 335 (C.M.A.1982).

3. Interestingly, at the time of appellant's trial, Miss Vance still professed to believe that she had been immunized from prosecution, even after the judge had entered an order which purported to grant her only testimonial immunity.

These actions by his subordinates would not logically tend to make the convening authority more predisposed to believe the testimony of Candice Vance.[4] Since the convening authority gave nothing in return for her testimony, he would have no occasion to be embarrassed by concluding that, as a government witness, Miss Vance had prevaricated. *Cf. United States v. Newman, supra.* We hold, therefore, that the convening authority was not disqualified to perform the review of appellant's trial.

## II

The second granted issue has been decided against appellant in our recent decision in *United States v. Ettleson,* 13 M.J. 348 (C.M.A.1982) and we observe that the remaining issue is essentially the same as that with which we dealt in *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982). Since we granted this issue long before *Grostefon* was decided, we conclude that, for purposes

of prospective or retroactive application, the same result should be reached here as in that case. Indeed, the Government conceded in oral argument that insofar as retroactivity is concerned, this case should be handled in the same way as *Grostefon.*

Pursuant to leave granted by this Court, 12 M.J. 298 (1981), the Government has filed documents which strongly suggest that appellate defense counsel cleared with appellant the abandonment of certain appellate issues which previously had been suggested by appellant. Such consultation and abandonment of issues is specifically authorized by *Grostefon.*[5] 12 M.J. at 437. However, in an abundance of caution, we have determined that, just as in *Grostefon,* we will review the various issues which appellant specified in his request for appellate representation or otherwise, but which were not raised by counsel either at the Court of Military Review or in our Court. Since these appear to be only issues of law,[6]

---

**4.** Only in an indirect way was Marshall a subordinate of the commander who convened appellant's general court-martial, for he was the deputy staff judge advocate of a subordinate command. According to the convening orders, Major At Lee was assigned to the Air Force Judiciary and was stationed at Travis Air Force Base—outside the convening authority's command.

**5.** Nonetheless, "[i]f the accused wishes to withdraw the issues, or change or modify them, appellate defense counsel will so state in the petition." *United States v. Grostefon,* 12 M.J. 431, 437 (C.M.A.1982). Failure to raise an issue in our Court can be especially damaging to an appellant since in a case reviewed upon petition of the accused our action need be taken only with respect to issues specified in the grant of review. *See* Article 67(d), U.C.M.J., 10 U.S.C. § 867(d); *United States v. Kelly,* 14 M.J. 196 (C.M.A.1982).

**6.** On Air Force Form 304—entitled "Request for Appellate Defense Counsel"—appellant enumerated these six matters which he wanted his assigned appellate defense counsel to raise on appeal:

"a. Prejudicial delay in action by Convening Authority

b. Jurisdiction

c. Refusal to order presence of witnesses (Beeler and Delgado)

d. Refusal to allow questioning of witness Edmondson about conversation with government lawyer, which conversation was not privileged

e. Propriety of providing other than a completely impartial attorney for prosecution witness

f. Refusal to strike testimony of witness Edmondson."

However, the resolution of these claims does not seem to involve any factual disputes or to call for evaluating credibility. As to the first claim, there is no dispute that appellant had not even been in confinement for more than ninety days when the convening authority finally acted on his court-martial. The jurisdictional question was fully litigated at trial, and the various arguments advanced by trial and defense counsel leave no doubt that basically only legal questions had to be resolved. For example, appellant contended that in light of the Military Bases Agreement of 1947 between the Republic of the Philippines and the United States, the Philippines had the primary right to exercise jurisdiction over the offenses charged, but that the Filipinos had not properly waived their primary jurisdiction, as required by this agreement, and therefore court-martial jurisdiction was lacking. Also appellant claimed that, while "on-post, on-duty agreements between the eventual seller and buyer concerning the drug sale can establish service connection, such may not be the case when a third party intermediary civilian is involved."

As to appellant's third claim, even though his counsel did urge on appeal that the military judge committed error by denying the defense request for attendance of Captain Beeler as a witness, he failed to assert the same contention

we conclude that they can be answered by us now, just as the issues of law were answered in *Grostefon*. Having reviewed those legal issues, we further conclude that they are without merit and, therefore, that remand to the Court of Military Review for their consideration is unnecessary.

### III

Accordingly, the decision of the United States Air Force Court of Military Review is affirmed.

Judges COOK and FLETCHER concur.

---

in regard to Delgado. Even so, as to both of these defense-requested witnesses, the judge only had to decide whether their testimony was material, which is a legal question.

Appellant's last three claims concern the testimony of the prosecution's witness, Lee Edmondson. Defense counsel argued that a certain Air Force regulation prohibited an Air Force legal assistance lawyer from forming an attorney-client relationship with this witness; so whatever Edmondson had discussed with the lawyer about the case could not have been privileged and was discoverable. Furthermore, defense counsel contended in his *Goode* rebuttal that "[d]iscussion with this attorney is little different from getting private advice from a prosecutor." Finally, trial defense counsel claimed that the witness' identification of a substance as cocaine was improper and Edmondson's testimony should have been stricken. Clearly, none of these claims involves any factual controversies, but instead each hinges on the application of legal principles. On all of these issues we are convinced that a legally correct decision was made at the trial level.